# IN THE SUPREME COURT OF IOWA

No. 16–0764

Filed June 29, 2018

**BRIAN K. ALLISON,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Keokuk County, Myron Gookin, Judge.

Petitioner requests further review of a court of appeals' decision affirming the dismissal of his petition for postconviction relief. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Robert E. Breckenridge of Breckenridge Law, P.C., Ottumwa, for appellant.

Thomas J. Miller, Attorney General, Kelli Huser and Doug Hammerand, Assistant Attorneys General, and John Schroeder, County Attorney, for appellee.

**APPEL, Justice.**

In this case, we consider whether the three-year statute of limitations in Iowa Code section 822.3 (2015) applies where a postconviction-relief (PCR) petitioner files an untimely second petition for PCR, alleging counsel for his timely filed first petition for PCR was ineffective. The district court held the second petition's allegation that the first postconviction counsel was ineffective did not supply a ground of fact to avoid the three-year statutory bar. The court of appeals affirmed, relying upon our previous decision in *Dible v. State*, 557 N.W.2d 881, 883, 886 (Iowa 1996) (en banc), *abrogated in part on other grounds by Harrington v. State*, 659 N.W.2d 509, 521 (Iowa 2003).

A second question raised in the case is whether the district court properly dismissed allegations in the amended petition filed in the second PCR action. The amended petition alleged newly discovered evidence—namely, that the victim and other witnesses recanted their testimony. The amended petition further alleged that there had been a change in the law regarding admissibility of expert testimony on the credibility of child victims. The district court recognized the amended petition had been filed, observed that the amended petition did not affect the "core basis" of the claim in the case, and denied relief. On appeal, the State contended that the petitioner failed to preserve the issues in the amended petition because the district court never granted leave to amend.

The court of appeals affirmed on two grounds. The court held that the claims raised in the amended petition were not preserved. The court also found that the allegations in the petition were too vague to provide a basis for relief.

In order to answer the first question, we revisit the holding in *Dible.* For the reasons expressed below, we vacate the decision of the court of appeals and reverse the judgment of the district court. On the second question, we find that the claims raised in the amended petition were adequately preserved. Rather than rule on the adequacy of the amended petition on appeal, we remand the case to the district court for further proceedings on the amended petition.

## I. Factual and Procedural Background.

A jury convicted Brian Allison of three counts of sexual abuse in the third degree in 2011. He appealed his conviction. In his direct appeal, Allison argued the district court erred in not granting him a new trial based upon the weight of the evidence under Iowa Rule of Criminal Procedure 2.24(2)(*b*)(6). Among other things, Allison noted the victim, his stepdaughter, initially denied the abuse, behaved normally during the time of the alleged abuse, returned to Allison's home after the abuse ended, and gave inconsistent testimony about the abuse.

On July 11, 2012, the court of appeals affirmed Allison's convictions. Although the court held the claim was not preserved, the court addressed Allison's weight-of-the-evidence claim in the context of ineffective assistance of counsel. Noting Allison's attack on the victim's credibility, the court cited expert testimony that it was not unusual for children to delay reporting abuse, to return to their abuser after the alleged acts, and to forget the details of the abuse. In addition, the court remarked that several witnesses testified about inappropriate physical contact, specifically Allison and the victim holding hands, the victim sitting on Allison's lap, Allison rubbing the victim's back, and Allison and the victim being together in bed under a blanket with Allison wearing boxer shorts and the victim wearing "skimpy shorts and a low-cut shirt."

The court concluded that under the circumstances, there was not a reasonable probability that the district court would have granted the motion for a new trial if the verdict-contrary-to-the-weight-of-the-evidence claim had been preserved. As a result, the court of appeals affirmed the convictions. Procedendo issued on September 6, 2012.

On March 6, 2013, Allison filed his first petition for PCR. Allison claimed that his trial counsel was ineffective for failing to investigate the bias of one of the jurors. At the hearing on the first PCR action, Allison and his son testified they observed a juror appear to wave and acknowledge Allison's ex-wife Tina, the mother of the victim. The district court denied relief, noting, among other things, that no evidence was offered showing the relationship between the juror and the mother and that there was no evidence of prejudice.

Allison appealed. On appeal, Allison claimed his PCR counsel did not properly investigate the claim of juror bias and, like his trial counsel, provided him with ineffective assistance. He claimed that if his PCR counsel had adequately investigated, he could have established there was a reasonable probability the result of the trial would have been different if the potentially biased juror had been removed.

On September 10, 2015, the court of appeals affirmed the denial of relief. The court explained that in order to support a claim of ineffective assistance of counsel, Allison was required to show he suffered prejudice from the presence of a biased juror in deliberations. The court noted that the PCR record did not establish the identity of the juror; whether the juror actually waived at the victim's mother; the relationship, if any, between the juror and the victim's mother; and whether any juror was in fact biased. The court of appeals held that Allison was not entitled to

relief based on ineffective assistance of counsel without developing the underlying claim of juror bias.

On November 5, Allison, proceeding pro se, filed a second petition for PCR. In his second petition, Allison alleged that his counsel in his first PCR action was ineffective for failing to develop adequately the record in connection with the juror-bias issue. According to Allison, "[a] brief investigation could have revealed the name of the juror and her familiarity with Tina Allison." Allison also noted that his counsel in the first PCR proceeding could have called Tina as a witness and developed the relationship between Tina and the juror.

The district court appointed counsel for Allison. The State filed a motion to dismiss. In its motion, the State noted procedendo in Allison's direct appeal was issued on September 6, 2012, and Allison's second petition was filed on November 5, 2015. The State asserted that because the second petition was filed more than three years after his convictions became final, it was barred by Iowa Code section 822.3. The State relied upon *Dible*, 557 N.W.2d at 886. In *Dible*, a 5–4 majority of this court held that ineffective assistance of counsel was not a "ground of fact" under Iowa Code section 822.3 that would allow a PCR petition to be filed more than three years after a conviction became final. *Id.*

Allison, now represented by counsel, resisted the motion to dismiss and filed an amended second petition for PCR. The amended petition reprised the claim of ineffective assistance for failure to investigate the allegation of juror bias, noting that the claim "extends beyond merely ineffective assistance." According to the motion, "[b]y utterly failing to do [his] job[]," Allison's previous PCR counsel "effectively render[ed Allison] with no post-conviction relief."

The amended petition also raised new issues. It asserted there was "reason to believe that the victim and other witnesses have recanted their testimony thus taking away the factual basis for [Allison's] conviction." The amended petition also claimed "[t]hat changes in the law and particularly the admissibility of expert testimony that tends to invade the [province] of the jury and attempting to bolster the credibility of child victims, would result in a change of verdict." An unreported hearing was held before the district court.

The district court granted the State's motion to dismiss. In its order, the court recognized that Allison filed his amended petition. The court further acknowledged Allison's claim that his amended petition cured the statute-of-limitations bar raised by the State. Yet the court concluded, "[T]he amended petition does not change the core basis for [Allison's] claim for post-conviction relief, namely, ineffective assistance of counsel by post-conviction counsel and ineffective assistance of post-conviction appellate counsel." The court ruled that such ineffective assistance was not a basis for avoiding the three-year statute of limitations in Iowa Code section 822.3.

Allison appealed. We transferred the case to the court of appeals. The court held that it was not at liberty to overturn *Dible* and that *Dible* was controlling on the issue of ineffective assistance of counsel. The court dismissed the remaining claims in Allison's amended petition on the ground that Allison failed to preserve error in the district court. The court also concluded that the additional allegations in the amended petition were insufficient to survive a motion to dismiss.

## II. Standard of Review.

Generally, we review a grant of a motion to dismiss a PCR petition for correction of errors at law. *Perez v. State,* 816 N.W.2d 354, 356 (Iowa

2012). But when a PCR petitioner claims ineffective assistance of PCR counsel, our review is de novo. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011).

**III. Discussion of Iowa Code Section 822.3 and the Right to Effective Assistance of Counsel.**

**A. Introduction.** Iowa Code section 822.3 generally provides a three-year statute of limitations for PCR claims. Iowa Code § 822.3. Section 822.5 provides a right to assistance of PCR counsel, which we have held logically implies a right to effective assistance of PCR counsel. *Lado*, 804 N.W.2d at 250; *Dunbar v. State*, 515 N.W.2d 12, 14–15 (Iowa 1994). This case raises a difficult question: What happens when a PCR petitioner alleges that his criminal trial attorney was ineffective, further alleges that his attorney in his first PCR proceeding was ineffective, and now seeks to have the underlying claim—which the first PCR attorney was allegedly ineffective in presenting—heard on the merits outside the three-year time frame of section 822.3?

The easy path would be to simply state a smooth-as-ice conclusion that there is no right to counsel in PCR. Yet close analysis reveals substantial constitutional and statutory issues. So the question is this: Is the smooth-as-ice approach strong enough to withstand weighty constitutional and statutory right-to-counsel challenges?

**B. Statutory Framework.** Chapter 822 generally provides the framework for obtaining PCR in Iowa. A PCR proceeding is commenced by filing an application with the appropriate district court. Iowa Code § 822.3. If the applicant is unable to pay for the costs and expenses of legal representation, such expenses are to be made available to the applicant. *Id.* § 822.5. "All rules and statutes applicable in civil

proceedings including pretrial and discovery procedures are available to the parties" in a PCR proceeding. *Id.* § 822.7.

"All grounds for relief available to an applicant . . . must be raised in the applicant's original, supplemental or amended application." *Id.* § 822.8. The provision further states,

> Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence . . . may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

*Id.*

The generally applicable statute of limitations is provided in Iowa Code section 822.3. This section provides, "All . . . applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." *Id.* § 822.3.

**C. Right to Counsel in PCR Proceedings.** The United States Constitution provides that there is a right to counsel "[i]n all criminal prosecutions." U.S. Const. amend. VI. The right-to-counsel provision of the Iowa Constitution has different language than the United States Constitution. Article I, section 10 of the Iowa Constitution provides, "In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right . . . to have the assistance of counsel." Iowa Const. art. I, § 10. Unlike the federal counterpart, the Iowa constitutional provision, on its face, extends beyond criminal prosecutions to other cases involving life or liberty. *See id.*

The United States Supreme Court has ruled that the right to counsel under the Federal Constitution does not extend to proceedings

for PCR. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987). In spite of the federal nature of *Finley*'s ruling and the presence of a vigorous dissent by Justice Brennan, PCR applicants in two reported cases have simply conceded that *Finley* means that a constitutional right to counsel is categorically not available in PCR actions and that the same is true under the Iowa Constitution, a sweeping concession not challenged or examined by the Iowa court. *See Wise v. State,* 708 N.W.2d 66, 69 (Iowa 2006); *Fuhrmann v. State,* 433 N.W.2d 720, 722 (Iowa 1988). *Wise* and *Fuhrmann* also do not consider the meaning of the "cases involving the life, or liberty" clause of article I, section 10 or its potential application to PCR proceedings.

In any event, Iowa Code section 822.5 has been held to amount to a statutory right to counsel in PCR proceedings. *Patchette v. State,* 374 N.W.2d 397, 398 (Iowa 1985) (discussing Iowa Code section 663A.5, now section 822.5). Further, we have held the statutory grant of a postconviction applicant's right to counsel necessarily implies that counsel be effective. *Id.* Thus, where the only counsel provided to an applicant has been ineffective, a violation of the statute occurs.

**D. Positions of the Parties.** On appeal, Allison recognizes that he must confront the case of *Dible.* In *Dible,* a narrow majority of this court held that a successive PCR application filed outside the three-year statute of limitations in Iowa Code section 822.3 was untimely and that ineffective assistance of counsel was not a "ground of fact" sufficient to extend the running of the limitations period. 557 N.W.2d at 886.

Allison claims that *Dible* is a case "with questionable value" as precedent and that *Dible* "needs to be revisited and reexamined." He notes that part of the holding in *Dible* was abrogated in *Harrington,* 659 N.W.2d at 521. Allison further notes that the dissent in *Dible* questioned

a bright-line approach that produced an unfair result. 557 N.W.2d at 886 (McGiverin, C.J., dissenting). Allison asserts that because his first PCR petition was "timely filed [but] was never given a proper opportunity to be heard because his counsel failed to perform essential duties," his current PCR petition should not be dismissed.

On the question of dismissal of his additional claims in the second PCR proceeding, Allison points out that, generally, the rules of civil procedure apply to PCR actions. *See* Iowa Code § 822.7. Under the rules of civil procedure, Allison argues, he is entitled to a hearing to attempt to prove the allegations in his amended petition. Allison asserts the new grounds alleged in his amended petition are not time-barred under Iowa Code section 822.3.

The State responds that *Dible* is good law and controls the outcome of the ineffective-assistance-of-counsel claim in this case. According to the State, *Dible* remains good law on the point that ineffective assistance of postconviction counsel is not a "ground of fact" to avoid the three-year statue of limitations in section 822.3. *See* 557 N.W.2d at 886 (majority opinion). The State stresses that the rationale underlying *Dible* remains strong. The purpose of the statute of limitations in section 822.3 is to reduce stale claims and cause "a sense of repose in the criminal justice system." *Id.* The State asserts that Allison did, in fact, raise the juror-bias claim within the three-year limitations period and did not prevail. The fact that he alleges he lost the juror-bias challenge in his first PCR proceeding because of his PCR counsel's ineffective assistance is of no moment to the State.

On the new issues raised in Allison's amended second petition, the State argues that error was not preserved because the district court never issued an order allowing amendment. Even if error was preserved,

the State asserts, the claims were vague allegations insufficient to avoid dismissal. The State indicates that with respect to the claim of newly discovered evidence, the petition does not identify which witnesses recanted or identify when the newly discovered evidence was uncovered. On the issue of new law, the State claims that Allison has not showed that any change in the law occurred in the past three years, as required for the exception to the statute of limitations. Allison did not identify any new statute or change in the caselaw or a particular witness or testimony that would be affected by the allegedly new law. The State emphasizes that because the postconviction hearing in this case was not recorded, the court should presume that no additional evidence beyond the pleadings was provided to the district court.

**E. The Winding and Nuanced Road of United States Supreme Court Right-to-Counsel Cases Involving PCR.**

1. *Introduction.* Allison does not expressly raise a federal or state constitutional challenge to the dismissal of his second application for PCR. Yet constitutional considerations must inform our approach to the proper interpretation of Iowa Code section 822.3. *See, e.g., State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 85 (Iowa 2014) ("The doctrine of constitutional avoidance suggests the proper course in the construction of a statute may be to steer clear of 'constitutional shoals' when possible."); *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 74 (Iowa 2010) ("If fairly possible, a statute will be construed to avoid doubt as to constitutionality."). The notion that a statute should be interpreted to avoid doubt as to its constitutionality is a principle that applies even when the parties do not explicitly claim a right to relief based on constitutional provisions. *Roth v. Evangelical Lutheran Good Samaritan Soc'y*, 886 N.W.2d 601, 611 (Iowa 2016) (interpreting statutory language guided by principle that

statutes should be construed to avoid constitutional questions in case involving only statutory claims); *In re Guardianship of Kennedy*, 845 N.W.2d 707, 711–14 (Iowa 2014) (interpreting a statute to avoid doubts as to constitutionality when constitutional argument not raised).

In this statutory interpretation case, it is important to understand the constitutional context in which this case arises. For example, did Allison have a constitutional or statutory right to counsel in his first PCR action? If so, is he constitutionally or statutorily entitled to a remedy for ineffective assistance of counsel, which is a constitutional deficiency ordinarily imputed to the state? If so, would application of the statute of limitations in Iowa Code section 822.3 to his second PCR action effectively prevent him from obtaining a remedy for the constitutional or statutorily established right-to-counsel violation? In order to understand the constitutional implications of our statutory interpretation of section 822.3 in this case, we canvass equal protection, due process, and right-to-counsel cases. As will be seen below, the constitutional terrain has been fragmented and highly contested.

2. *Navigating the constitutional shoals: early federal caselaw related to right to counsel, equal protection, and due process in criminal cases.* Decades ago, the United States Supreme Court developed the right of a criminal defendant to counsel in a series of landmark cases. The fountainhead case is, of course, *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932). In *Powell*, seven black men charged with the rape of two white women were convicted and given death sentences when the state failed to provide counsel until the morning of trial. *Id.* at 49–51, 53 S. Ct. at 57. The Supreme Court held that the defendants were entitled to the meaningful assistance of counsel in their defense in a state murder prosecution. *Id.* at 73, 53 S. Ct. at 65. The Supreme Court in

*Powell* utilized many themes, including the notion that "[e]ven the intelligent and educated layman . . . requires the guiding hand of counsel at every step in the proceedings against him." *Id.* at 69, 53 S. Ct. at 64.

*Powell* was only the beginning. Although limited to the facts of the case, its principles were potentially protean. Nonetheless, expansion of the right to counsel beyond *Powell* proved gradual. For instance, while in *Johnson v. Zerbst,* the Supreme Court extended the right to counsel to federal prosecutions for felonies generally, 304 U.S. 458, 463, 469, 58 S. Ct. 1019, 1022–23, 1025 (1938), in *Betts v. Brady*, the Court declined to hold categorically that criminal defendants were entitled to counsel, 316 U.S. 455, 461–62, 62 S. Ct. 1252, 1256 (1942), *overruled by Gideon v. Wainwright*, 372 U.S. 335, 345, 83 S. Ct. 792, 797 (1963).

While the Supreme Court moved cautiously with respect to expansion of the Sixth Amendment right to counsel, other constitutional theories were available, in effect, to extend the right to counsel in criminal proceedings. In *Griffin v. Illinois*, the Supreme Court considered whether a criminal defendant could be required to pay for transcripts in order to appeal a criminal conviction. 351 U.S. 12, 13, 76 S. Ct. 585, 588 (1956). The *Griffin* Court emphasized that the state is not required by the United States Constitution to "provide appellate courts or a right to appellate review at all." *Id.* at 18, 76 S. Ct. at 590. But, the Court held, if the state in its discretion established a right of appeal, it could not administer its appellate process in a discriminatory manner and still be consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id.* at 19, 76 S. Ct. at 591. *Griffin* introduced the notion that access to the courts cannot be provided on a discriminatory basis based on wealth, a notion which was soon applied in the context of the right of an indigent defendant to appointed counsel.

In 1963, the Supreme Court decided two seminal right-to-counsel cases that built on and extended the reach of prior precedents. In *Gideon*, the Court, in applying the Sixth Amendment right to counsel to the states pursuant to the Due Process Clause of the Fourteenth Amendment, departed from the notion that right to counsel was afforded on a case-by-case basis. 372 U.S. at 343–44, 83 S. Ct. at 796. Instead, the *Gideon* Court established the categorical rule that a criminal defendant facing serious crimes was entitled to the assistance of counsel in all state court cases. *Id.* at 345, 83 S. Ct. at 797.

In a companion case, *Douglas v. California*, the Supreme Court considered a challenge to a California rule of criminal procedure wherein a court would engage in an ex parte examination to determine whether an appeal merited the appointment of counsel. 372 U.S. 353, 354–55, 83 S. Ct. 814, 815 (1963). The *Douglas* Court held that denying an indigent defendant appointed counsel on a first appeal as a matter of right infringed upon the "equality demanded by the Fourteenth Amendment." *Id.* at 357–58, 83 S. Ct. at 816–17. The Court reasoned the California scheme, which required an indigent defendant to run a procedural gauntlet in order to obtain appointed counsel, did not comport with fair procedure. *Id.* at 357, 83 S. Ct. at 816. According to the *Douglas* Court, a rich man could require the court to listen to a lawyer in making its decision on the merits while a poor person could not do so. *Id.* at 357, 83 S. Ct. at 817. As noted in *Douglas*, where the record is unclear or errors are hidden, the right of appeal for an indigent defendant thus becomes "a meaningless ritual" while the rich defendant has "a meaningful appeal." *Id.* at 358, 83 S. Ct. at 817. Although utilizing the theories of due process and equal protection, the *Douglas* Court, like in *Powell* and *Gideon*, emphasized the importance of the

assistance of counsel and minimized the ability of indigent defendants to proceed effectively on a pro se basis. *Id.* at 355–57, 83 S. Ct. at 815–16.

Yet *Gideon* and *Douglas*'s emphases on the need for trained counsel and the limited abilities of pro se defendants did not carry the day nearly a decade later in *Ross v. Moffitt*, 417 U.S. 600, 94 S. Ct. 2437 (1974). In *Ross*, the Supreme Court considered whether there was a right to appointed counsel for discretionary state appeals or certiorari petitions to the Supreme Court. *Id.* at 602–03, 94 S. Ct. at 2440. By a 6–3 majority, the Court concluded there was no right to appointed counsel for discretionary appeals. *Id.* at 618–19, 94 S. Ct. at 2447–48. The *Ross* majority stated that an indigent defendant could file an application for discretionary review pro se by simply following the briefing prepared by counsel in the prior appeal of right. *Id.* at 615, 94 S. Ct. at 2446. Nevertheless, the majority qualified its ruling by prohibiting the state from adopting procedures that leave indigent defendants " 'entirely cut off from any appeal at all' by virtue of . . . indigency." *Id.* at 612, 94 S. Ct. at 2445 (quoting *Lane v. Brown*, 372 U.S. 477, 481, 83 S. Ct. 768, 771 (1963)). The question, according to the *Ross* majority, was "not one of absolutes but one of degrees." *Id.*

The *Ross* dissenters, led by Justice Douglas, emphasized that an application for discretionary appeal, such as certiorari before the Supreme Court, has technical requirements that are hazards for the untrained. *Id.* at 620–21, 94 S. Ct. at 2448–49 (Douglas, J., dissenting). Further, the dissenters noted the factors that a court may deem relevant for discretionary review are not within the normal knowledge of an indigent appellant. *Id.* at 621, 94 S. Ct. at 2449. The *Ross* dissenters simply did not buy the notion that imprisoned indigent defendants are in a position to meaningfully develop applications for discretionary review

by filing, without the assistance of counsel, a cut-and-paste job based on prior briefing. *See id.* at 620–21, 94 S. Ct. 2448–49.

Instead of extending the right to counsel to habeas proceedings generally, the Supreme Court held in *Bounds v. Smith* that in order to provide inmates without counsel with access to the courts, state authorities are required to provide inmates with adequate law libraries or adequate assistance from persons trained in law. 430 U.S. 817, 830–32, 97 S. Ct. 1491, 1499–500 (1977). The constitutional right of access to the courts requires providing state prisoners with some form of assistance but not necessarily a lawyer. *Id.* at 831–32, 97 S. Ct. at 1499–500.

3. Finley *and* Murray*: developing the contours of right to counsel in PCR.* The first recent United States Supreme Court case specifically considering the question of whether a defendant has a right to counsel in PCR proceedings is *Finley.* In *Finley,* an indigent petitioner, who lost her direct appeal, filed a petition for PCR raising "the same issues that the Supreme Court of Pennsylvania had rejected on the merits" on direct appeal. 481 U.S. at 553, 107 S. Ct. at 1992. The trial court had denied relief, but the Pennsylvania Supreme Court reversed, holding the petitioner was entitled to appointed counsel under state law. *Id.* at 553, 107 S. Ct. at 1992. The trial court then appointed trial counsel, but trial counsel moved to withdraw from the case without complying with the procedures in *Anders v. California,* 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967). *Finley,* 481 U.S. at 553–54, 107 S. Ct. at 1992–93. The trial court approved appointed counsel's motion to withdraw without application of *Anders*'s procedures and dismissed the petition for PCR. *Id.* at 553, 107 S. Ct. at 1992.

The petitioner obtained new counsel, who appealed the dismissal. *Id.* On appeal, the Pennsylvania Superior Court found counsel's withdrawal without application of *Anders*'s procedures was unconstitutional. *Id.* at 553–54, 107 S. Ct. at 1992. The Pennsylvania Superior Court remanded the case to the trial court for further proceedings. *Id.* at 554, 107 S. Ct. at 1992.

By a 6–3 majority, the *Finley* Court stated, "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today." *Id.* at 555, 107 S. Ct. at 1993 (citation omitted). The Court emphasized the procedural posture of the case, noting "[o]ur cases establish that the right to appointed counsel extends to the first appeal of right, and no further." *Id.*

The *Finley* majority rejected claims that the *Griffin–Douglas* type of equal protection and due process required the appointment of counsel in the case. *Id.* at 554–55, 107 S. Ct. at 1993. On the due process argument, the *Finley* Court emphasized that the prisoner had, in fact, been provided an opportunity to assert the presumption of innocence and attack the conviction on direct appeal. *Id.* at 555, 107 S. Ct. at 1993. Accordingly, due process did not require appointment of counsel when used "as a sword to upset the prior determination of guilt." *Id.* at 555–56, 107 S. Ct. at 1993 (quoting *Ross*, 417 U.S. at 610–11, 107 S. Ct. at 2444 (majority opinion)).

With respect to equal protection, the *Finley* majority emphasized that PCR is "even further removed from the criminal trial than is discretionary direct review," for which counsel is not required under federal law. *Id.* at 556–57, 107 S. Ct. at 1994. The Court stressed that PCR "is not part of the criminal proceeding itself, and it is in fact

considered to be civil in nature." *Id.* at 557, 107 S. Ct. at 1994; *see Fay v. Noia*, 372 U.S. 391, 423–24, 83 S. Ct. 822, 841 (1963), *overruled in part on other grounds by Wainwright v. Sykes*, 433 U.S. 72, 85, 97 S. Ct. 2497, 2505 (1977). The *Finley* Court emphasized the ability of prisoners to proceed pro se in PCR, noting that defendants who have had the benefit of a trial and direct appeal had access to the trial record and appellate briefs and opinions. 481 U.S. at 557, 107 S. Ct. at 1994.

In a dissent, Justice Brennan emphasized that the applicant in the case had a mandatory, state-provided right to appointed counsel and, as a result, a right to effective assistance of counsel. *Id.* at 562–63, 107 S. Ct. at 1997 (Brennan, J., dissenting). Justice Brennan argued the right to effective assistance, once granted, cannot be "withdrawn in a manner inconsistent with equal protection and due process." *Id.* at 567, 107 S. Ct. at 1999. According to Justice Brennan, it would be fundamentally unfair to deny indigents an adequate opportunity to present their claims fairly in PCR proceedings. *Id.* at 568, 107 S. Ct. at 2000. Further, Justice Brennan asserted that equal protection requires appointed counsel to comply with *Anders*'s requirements. *Id.* at 567–68, 107 S. Ct. at 2000.

Obviously, the *Finley* case produced controversy among the justices. There were, however, clear limitations in the *Finley* majority opinion. In the first paragraph of the opinion, the *Finley* majority emphasized that the prisoner "raised the same issues that the Supreme Court of Pennsylvania had rejected on the merits." *Id.* at 553, 107 S. Ct. at 1992 (majority opinion). And the *Finley* majority later noted that "in this case," the United States Constitution does not command a different result. *Id.* at 556, 107 S. Ct. at 1994.

These passages make clear that the *Finley* majority did not determine whether the Federal Constitution requires appointment of counsel in PCR proceedings where the issues presented were not decided on the merits on direct appeal. Indeed, the entire rationale of *Finley* is based on the notion that the indigent defendant had her claims heard on the merits in at least one appellate forum, thereby shifting the case from one involving an appeal of a conviction to one attacking a conviction already examined once and found valid.

The next United States Supreme Court case in the procession of right-to-counsel cases is *Murray v. Giarratano,* 492 U.S. 1, 109 S. Ct. 2765 (1989). In *Murray*, Virginia death row inmates brought a 42 U.S.C. § 1983 action against various state officials, alleging that the state's failure to provide them with appointed counsel in PCR proceedings denied their constitutional right of access to the courts. *Id.* at 4, 109 S. Ct. at 2767 (plurality opinion). The federal district court held the inmates were entitled to relief. *Id.* at 6, 109 S. Ct. at 2768. The district court cited three special considerations supporting this result, namely, the limited amount of time petitioners had to prepare petitions, the complexity of death penalty cases, and the impact that the shadow of impending death would have on their ability to do legal work. *Id.* at 4–5, 109 S. Ct. at 2767.

The district court also rejected Virginia's assertions that it had provided assistance to death row inmates by other means. *Id.* at 5, 109 S. Ct. at 2768. The district court found Virginia's approach of providing "unit attorneys" in various penal institutions, who did not actually represent inmates, was "too limited." *Id.* While Virginia courts had discretion to appoint counsel at a later stage of PCR proceedings for

death row inmates, the process of discretionary appointment did not provide "continuous assistance of counsel." *Id.* at 6, 109 S. Ct. at 2768.

The United States Court of Appeals for the Fourth Circuit, sitting en banc, affirmed the district court. *Id.* The Fourth Circuit held the district court's special considerations amounted to findings of fact on the question of death-row inmates' access to the courts, a question not considered in *Finley*. *Id.* at 6–7, 109 S. Ct. at 2768. The Fourth Circuit cited *Bounds*, 430 U.S. 817, 97 S. Ct. 1491, where the Supreme Court held a prisoner's right of access to the courts requires the state to furnish a prison library in order to prepare petitions for judicial relief. *Murray*, 492 U.S. at 7, 109 S. Ct. at 2768.

The Supreme Court could not muster a majority opinion in *Murray*. The plurality opinion, written by Chief Justice Rehnquist, generally found that the approach in *Finley* was dispositive. *Id.* at 10, 109 S. Ct. at 2770. It declined to hold that a different approach should apply to death-penalty cases. *Id.* The plurality rejected *Bounds* as authority for limiting *Finley*. *Id.* at 11, 109 S. Ct. at 2771.

Justice O'Connor filed a brief concurring opinion. *Id.* at 13, 109 S. Ct. at 2772 (O'Connor, J., concurring). She emphasized that postconviction proceedings are "civil action[s] designed to overturn a presumptively valid criminal judgment." *Id.* She also noted that the principles of the plurality were not inconsistent with *Bounds* because states have broad discretion in providing inmates with access to the courts. *Id.*

Justice Kennedy filed an opinion concurring in the judgment. *Id.* at 14, 109 S. Ct. at 2772 (Kennedy, J., concurring). He recognized that the complexity of death-penalty jurisprudence made it unlikely that defendants would "be able to file successful petitions for collateral relief

without the assistance of persons learned in the law." *Id.* He noted, however, that on the record before the court, no prisoner on death row had been unable to obtain counsel in postconviction proceedings and that Virginia's prison system provided institutional counsel to help inmates prepare petitions for PCR. *Id.* at 14–15, 109 S. Ct. at 2773. Under the facts presented, Kennedy found no constitutional violation. *Id.* at 15, 209 S. Ct. at 2773.

Justice Stevens, joined by Justices Brennan, Marshall, and Blackmun, dissented. *Id.* (Stevens, J., dissenting). The dissenters emphasized that the unique features of the death penalty require additional protections. *Id.* at 20–22, 109 S. Ct. at 2775–76. The dissenters noted that in federal habeas cases, capital petitioners were successful in seeking relief in sixty to seventy percent of cases. *Id.* at 23–24, 109 S. Ct. at 2778. As a result, according to the dissenters, "meaningful appellate review" in capital cases "extends beyond the direct appellate process." *Id.* at 24, 109 S. Ct. at 2778.

The *Murray* dissenters further emphasized that some claims, including ineffective-assistance-of-counsel claims, usually cannot be considered on direct appeal. *Id.* The dissenters noted that where trial counsel fails to raise a variety of potentially meritorious issues, such claims are precluded on direct review by Virginia law. *Id.* As a result of the inability to raise potentially meritorious claims on appeal, the PCR proceedings are "key to meaningful appellate review of capital cases." *Id.* at 25–26, 109 S. Ct. at 2778–79.

Finally, the *Murray* dissenters noted that the plight of a death-penalty inmate in Virginia makes it unlikely that the inmate could prepare his or her own pleadings. *Id.* at 27, 109 S. Ct. at 2779–80. In Virginia, an execution may be carried out at any time following thirty

days after sentencing.  *Id.* at 27 n.20, 109 S. Ct. at 2780 n.20.  Further, capital litigation is complex, and the inmate must also be preparing him or herself and his or her family for the impending execution.  *Id.* at 28, 109 S. Ct. at 2780.  Under the circumstances, the dissenters believed meaningful access to the courts requires the assistance of counsel in PCR proceedings.  *Id.* at 29, 109 S. Ct. at 2781.

4.  Coleman *and its progeny: further exploration.*  The United States Supreme Court returned to the question of whether a criminal defendant is entitled to counsel in PCR proceedings in another case that split the members of the Court, *Coleman v. Thompson,* 501 U.S. 722, 111 S. Ct. 2546 (1991), *superseded by statute on other grounds,* 28 U.S.C. § 2254 (2000).  In *Coleman,* the defendant was convicted of murder and rape and sentenced to death.  *Id.* at 726–27, 111 S. Ct. at 2552.  His convictions were affirmed on direct appeal.  *Id.* at 727, 111 S. Ct. at 2552.  Coleman then filed a petition for a writ of habeas corpus in state court, alleging "numerous federal constitutional claims that he had not raised on direct appeal."  *Id.*  The state court ruled against him on all claims after a hearing.  *Id.*  Coleman's lawyer, however, did not file a notice of appeal until thirty-three days after the entry of judgment.  *Id.* at 727, 111 S. Ct. at 2552–53.  As a result, the appeal was untimely and dismissed by the Virginia Supreme Court.  *Id.* at 727–28, 111 S. Ct. at 2553.  Coleman then filed a petition for habeas corpus in federal court.  *Id.* at 728, 111 S. Ct. at 2553.

In the federal district court, Coleman raised eleven federal constitutional claims.  *Id.*  Four of the claims were the same as on direct appeal before the Virginia Supreme Court, and seven were presented for the first time in the state habeas proceeding.  *Id.*  The Fourth Circuit affirmed.  *Id.*  The Fourth Circuit found Coleman defaulted on his appeal

of the seven claims raised in the state habeas proceeding and, as a result of his procedural default, federal habeas relief was not available. *Id.* at 728–29, 111 S. Ct. at 2553.

The United States Supreme Court affirmed in a divided opinion. *Id.* at 757, 111 S. Ct. at 2568. Justice O'Connor's majority opinion emphasized that a determination based upon independent and adequate state grounds generally bars federal habeas corpus review of the underlying federal constitutional issues. *Id.* at 729, 111 S. Ct. at 2553. The majority found it clear that the Virginia Supreme Court relied upon Coleman's procedural default in rejecting his appeal. *Id.* at 744, 111 S. Ct. at 2561. As a result, the majority concluded Coleman was not entitled to be heard on his defaulted claims in a federal habeas proceeding. *See id.* at 750, 111 S. Ct. at 2565.

The majority rejected Coleman's effort to avoid the general rule by claiming that his counsel was ineffective in failing to file a timely appeal. *Id.* at 757, 111 S. Ct. at 2568. The majority noted that under *Finley*, Coleman had no right to effective assistance of counsel in postconviction proceedings. *Id.* at 752, 111 S. Ct. at 2566. In the absence of a constitutional violation, according to the *Coleman* majority, the petitioner must "bear the risk of attorney error." *Id.* at 752–53, 111 S. Ct. at 2566 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)).

Importantly, the majority expressly reserved the question of whether an applicant is entitled to assistance of counsel under the Sixth Amendment in PCR proceedings where the applicant can raise the claim in the first instance only in PCR and, as a result, PCR functions as the first appeal of right. *Id.* at 755, 111 S. Ct. at 2567. The *Coleman* majority recognized the problem emphasized by the dissenters in *Murray*,

492 U.S. at 24, 109 S. Ct. at 2778. In Coleman's case, however, the majority noted that there was no claim that Coleman's counsel was ineffective before the trial court in the postconviction action. *Coleman*, 501 U.S. at 755, 111 S. Ct. at 2567–68.

Justice Blackmun, along with Justices Marshall and Stevens, dissented. *Id.* at 758, 111 S. Ct. at 2569 (Blackmun, J., dissenting). The bulk of the dissent attacked the majority's approach to independent state grounds. *Id.* at 759–71, 111 S. Ct. at 2569–76. But the dissent also attacked the conclusion that the petitioner was not entitled to relief based on ineffective assistance of counsel. *Id.* at 771–74, 111 S. Ct. at 2576–78. The dissent asserted that no federal court rule "can deter gross incompetence." *Id.* at 773, 111 S. Ct. at 2577. According to the dissent,

> if a State desires to remove from the process of direct appellate review a claim or category of claims, the Fourteenth Amendment binds the State to ensure that the defendant has effective assistance of counsel for the entirety of the procedure where the removed claims may be raised.

*Id.* at 773–74, 111 S. Ct. at 2577.

The express reservation of the *Coleman* majority with respect to claims presented for the first time in PCR and where counsel is allegedly ineffective before the PCR trial court has not always been recognized. Indeed, it has mostly been ignored. For instance, in *Mackall v. Angelone*, the Fourth Circuit cited *Coleman* for the broad and unqualified proposition that the Sixth Amendment does not require counsel in PCR proceedings. 131 F.3d 442, 448 (4th Cir. 1997) (en banc).

The dissent in *Mackall*, however, recognized the question reserved in *Coleman* and stressed that a person charged with a serious crime has the right to counsel at trial, *Gideon*, 372 U.S. at 336–45, 83 S. Ct. at

792–97, that right extends to a first appeal, *Douglas*, 372 U.S. at 355–58, 83 S. Ct. at 815–17, and constitutionally required counsel must be competent, *Strickland v. Washington*, 466 U.S. 668, 684–87, 104 S. Ct. 2052, 2062–64 (1984). *Mackall*, 131 F.3d at 451 (Butzner, J., dissenting). The *Mackall* dissent asserted that while the Supreme Court, generally, has ruled there is no right to counsel in PCR, there must be an exception to the general rule where PCR proceedings are "in reality a direct attack on the competency of [the petitioner's] trial and appellate counsel in the only forum available to him—a habeas corpus proceeding." *Id.* at 452. According to the *Mackall* dissent, "for this limited purpose," a criminal defendant is "entitled to the assistance of competent counsel" in PCR proceedings. *Id.* *See generally* Emily Garcia Uhrig, *A Case for a Constitutional Right to Counsel in Habeas Corpus*, 60 Hastings L.J. 541, 588–89 (2009) [hereinafter Uhrig, *Constitutional Right to Counsel*].

Similarly, a federal appeals court considered the question of whether a defendant is entitled to counsel in PCR in *Jeffers v. Lewis*, 68 F.3d 295 (9th Cir.), *vacated*, 68 F.3d 299 (9th Cir. 1995) (en banc). The three-judge panel that first considered the issue emphasized that

> granting relief to Jeffers would not start an endless chain of permissible habeas relief . . . . There is a right to one, conflict-free set of counsel to pursue the claim that prior counsel were ineffective at trial, sentencing and on direct appeal.

*Id.* at 297. The Ninth Circuit, sitting en banc, however, reversed the panel over the dissent of four judges. *Jeffers*, 68 F.3d at 300–01. *See generally* Uhrig, *Constitutional Right to Counsel*, 60 Hastings L.J. at 591–94.

The United States Supreme Court returned to the question of whether an indigent petitioner is entitled to counsel in PCR proceedings in *Martinez v. Ryan*, 566 U.S. 1, 5, 132 S. Ct. 1309, 1313 (2012). In *Martinez*, the petitioner was convicted of two counts of sexual conduct with a minor. *Id.* Arizona law prohibited raising ineffective-assistance-of-trial-counsel claims on direct appeal, and no such claims were made. *Id.* at 6, 132 S. Ct. at 1314. Oddly, while Martinez's direct appeal was pending, his lawyer filed a "Notice of Post-Conviction Relief" with the trial court and later filed a statement that she was unable to identify any colorable claim for PCR. *Id.* The trial court dismissed the PCR action, and the Arizona Court of Appeals affirmed. *Id.*

Martinez's new counsel filed a second PCR petition on his behalf in the state trial court. *Id.* at 6–7, 132 S. Ct. at 1314. In his second PCR petition, Martinez alleged that his trial counsel was ineffective for failing to challenge expert testimony explaining the victim's recantation and to present a rebuttal expert. *Id.* at 7, 132 S. Ct. at 1314. Martinez further alleged that counsel was ineffective for failing to provide an exculpatory explanation for the presence of his DNA on the victim's nightgown. *Id.* The trial court dismissed the petition as procedurally barred under state law because of the failure to raise the issues in the first PCR petition. *Id.* The Arizona Court of Appeals again affirmed. *Id.*

Martinez then filed a federal habeas corpus action, again raising his claims of ineffective assistance of trial counsel. *Id.* The district court, citing *Coleman*, 501 U.S. at 753–54, 111 S. Ct. at 2567 (majority opinion), denied the petition, concluding the procedural default amounted to an independent state ground to deny relief. *Martinez*, 566 U.S. at 7–8, 132 S. Ct at 1315. The Ninth Circuit affirmed. *Id.* at 8, 132 S. Ct. at 1315.

In an opinion by Justice Kennedy, the Supreme Court reversed the Ninth Circuit. *Id.* at 18, 132 S. Ct. at 1321. The *Martinez* Court recognized that *Coleman* left open whether there is a right to counsel in "collateral proceedings which provide the first opportunity to raise a claim of ineffective assistance at trial." *Id.* at 8, 132 S. Ct. at 1315. It described such collateral proceedings as "initial-review collateral proceedings." *Id.* The Court recognized there was a constitutional question regarding the right to counsel in such proceedings but stated that the case could be decided on a narrower ground, namely, whether the attorney's ignorance or inadvertence in a PCR proceeding might excuse a procedural default. *Id.* at 9, 132 S. Ct. at 1315.

In considering this issue, the Court, seizing on the reasoning of the dissenters in *Finley*, *Murray*, and *Coleman*, noted that when an attorney errs in an initial-review collateral proceeding, it is unlikely that the state court will hear the petitioner's claim at any level. *Id.* at 11, 132 S. Ct. at 1317. The Court explained that the initial-review collateral proceeding "is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.*

The *Martinez* Court emphasized the importance of effective assistance of counsel in an initial-review collateral proceeding. *Id.* at 11–12, 132 S. Ct. at 1317. It cited *Gideon* for the "obvious truth" that an indigent person "cannot be assured of a fair trial unless counsel is provided." *Id.* at 12, 132 S. Ct. at 1317 (quoting *Gideon*, 372 U.S. at 344, 83 S. Ct. at 796). But rather than declaring a constitutional right to effective assistance of counsel in an initial-review collateral proceeding, the Court simply held the procedural default that resulted from the ineffective assistance could be waived "as an equitable matter," thus

allowing Martinez's substantive claim to be heard in federal court. *Id.* at 14, 132 S. Ct. at 1318.

The *Martinez* Court declined to hold there is a right to counsel in initial-review habeas proceedings on federalism grounds. *Id.* at 16, 132 S. Ct. at 1319. The Court was concerned that a constitutional approach would impose the same system of appointing counsel in every state and would not permit states to experiment with a variety of systems for appointment of counsel. *Id.* at 16, 132 S. Ct. at 1319–20. Once again, federalism concerns generated a reluctance on the part of the United States Supreme Court to impose federal constitutional norms on the states. *See id.*

Justice Scalia, joined by Justice Thomas, dissented. *Id.* at 18, 132 S. Ct. at 1321 (Scalia, J., dissenting). He declared that while the majority was seeking to advance the values of federalism by avoiding a constitutional holding, it achieved the same result it sought to avoid, namely, a rule requiring federal courts to review claims from state courts where the otherwise independent and adequate ground for dismissal of the claim—a state procedural default—was caused by ineffective assistance of counsel. *Id.* at 19, 132 S. Ct. at 1321.[1]

All of these cases demonstrate a number of propositions. They establish multiple theories for the right to counsel that indigent petitioners may use to obtain counsel to challenge criminal convictions. Nonetheless, the United States Supreme Court has been fragmented and

---

[1]In *Trevino v. Thaler*, the Supreme Court held that the approach in *Martinez* applies not only when the state does not necessarily bar all ineffective-assistance-of-counsel claims from being heard on direct appeal, but also where it is highly likely that, in a typical case, such a claim cannot be heard on direct appeal. 569 U.S. 413, 429, 133 S. Ct. 1911, 1921 (2013).

sharply divided regarding the constitutional questions surrounding the provision of counsel to indigent petitioners in postconviction proceedings.

Recent United States Supreme Court majorities are less than enthusiastic about a general expansion of the right to counsel in PCR contexts. *See, e.g., id.* at 9, 16, 132 S. Ct. at 1315, 1319–20 (majority opinion). Some of the reasoning of these recent, more restrictive cases emphasizes the difference between a direct appeal in a criminal case and a PCR action, which is civil in nature. *See, e.g., id.* at 14, 132 S. Ct. at 1318. These restrictive cases tend to emphasize the ability of indigent defendants to file their own legal papers. *See, e.g., Ross,* 417 U.S. at 615, 94 S. Ct. at 446 (majority opinion). And the restrictive holdings of the United States Supreme Court are motivated, at least in part, by concepts of federalism and the resulting reluctance of the United States Supreme Court to declare national rules under the aegis of the United States Constitution. *See, e.g., Martinez,* 566 U.S. at 16, 132 S. Ct. at 1319–20.

Yet the Supreme Court has struggled with the very situation presented in this case—an indigent defendant claims that trial counsel provided ineffective assistance, his claim is not capable of being addressed on direct appeal, and in the first forum to hear the ineffective-assistance claim, his counsel was, once again, ineffective. Where a habeas proceeding is the first forum to hear a challenge to a criminal conviction, the defendant is functionally in the same situation as in *Douglas,* where the Supreme Court held that appointed counsel must be provided as a matter of due process and equal protection. 372 U.S. at 357–58, 83 S. Ct. at 817.

In *Martinez,* although the Court stopped short of announcing a constitutional rule, the Court invoked equitable principles to excuse the

procedural defaults that occurred in the state court proceedings and ordinarily would have barred the defendant from a federal habeas action. 566 U.S. at 16, 132 S. Ct. at 1319. *Martinez* has generated energetic debate, with commentators discussing whether the holding will be limited to its facts or will lead to a more general recognition of the right to counsel in PCR. *See, e.g.*, Ty Alper, *Toward a Right to Litigate Ineffective Assistance of Counsel*, 70 Wash. & Lee L. Rev. 839, 868–80 (2013); Allen L. Bohnert, *Wrestling with Equity: Identifiable Trends as the Federal Courts Grapple with the Practical Significance of* Martinez v. Ryan *&* Trevino v. Thaler, 43 Hofstra L. Rev. 945, 975 (2015); Emily Garcia Uhrig, *Why Only* Gideon*?:* Martinez v. Ryan *and the "Equitable" Right to Counsel in Habeas Corpus*, 80 Mo. L. Rev. 771, 808 (2015).

In particular, one commentator has noted the potential interaction between *Martinez* and the federal statute of limitations for habeas proceedings. Justin F. Marceau, *Is Guilt Dispositive? Federal Habeas After* Martinez, 55 Wm. & Mary L. Rev. 2071, 2167–68 (2014). It has been suggested that "[i]f *Martinez* opens the door to vindicating otherwise unavailable constitutional claims, the same equitable concerns that undergird the rule ought to prevent the federal statute of limitations from closing off such relief." *Id.*; *see McQuiggin v. Perkins*, 569 U.S. 383, 391, 133 S. Ct. 1924, 1931 (2013) (discussing equitable tolling); *Holland v. Florida*, 560 U.S. 631, 650, 130 S. Ct. 2549, 2563 (2010) (same).

**F. State Cases Dealing with the Right to Counsel in PCR.** There are two state court cases of interest dealing with the right to counsel in PCR proceedings.

The first case is the pre-*Coleman* case of *Honore v. Washington State Board of Prison Terms & Paroles*, 466 P.2d 485 (Wash. 1970) (en banc). In *Honore*, the Washington Supreme Court considered whether an

indigent is entitled to the assistance of appointed counsel when appealing the dismissal of his action for PCR. *Id.* at 487–88.

The Washington court began its discussion by emphasizing the important role of habeas corpus proceedings, starting with the Magna Carta and extending into present day state and federal constitutional provisions prohibiting suspension of the writ except in extreme circumstances. *Id.* The *Honore* court noted habeas proceedings have been frequently characterized as civil in nature but that label is inexact in the context of postconviction proceedings. *Id.* at 488. The court also noted that while the United States Supreme Court had not addressed the question, the majority of courts had declined to extend the right to counsel to habeas proceedings because they are characterized as civil proceedings. *Id.* at 488–49.

In considering whether there was a right to counsel in PCR proceedings, the *Honore* court addressed the state's argument that many PCR claims are "frivolous and can be submitted over and over again." *Id.* at 492. With respect to the question of frivolous petitions, the court concluded the proper approach is not to discriminate against the poor in the appointment of counsel but to discriminate against the frivolous petitions. *Id.* On the issue of successive petitions, the court noted the proper response is to reject summarily claims that have already been decided without the appointment of counsel. *Id.* Citing *Griffin* and *Douglas*, the court concluded that the Equal Protection Clause of the United States Constitution requires that counsel be furnished on appeal in a PCR proceeding. *Id.* at 493. In short, the *Honore* court extended the principle of *Douglas* to an initial-review PCR claim. *See id.* Cases in a number of other states have taken a similar approach. *See, e.g., Nichols v. State*, 425 P.2d 247, 254 (Alaska 1967) (finding right to counsel for

ineffectiveness claim on first habeas petition); *Duncan v. Robbins*, 193 A.2d 362, 367 (Me. 1963) (observing the postconviction and collateral nature of case had little meaning when issues bear on constitutional liberty); *Jackson v. State*, 732 So. 2d 187, 190 (Miss. 1999) ("Certain issues must often be deferred until the post-conviction stage, such as the claim of ineffective assistance of counsel.").

Other state court cases, however, reject the notion of a constitutionally based right to counsel in postconviction proceedings, often by broadly declaring that PCR proceedings are civil in nature. *See, e.g., Barnes v. State*, 744 S.E.2d 795*, 797 n.1 (Ga. 2013) ("[A] habeas corpus proceeding is a collateral, civil proceeding to which there is no right to appointed counsel."); *State ex rel. Hall v. Meadows*, 389 S.W.2d 256, 260 (Tenn. 1965) (declaring "[i]t has been repeatedly held that a habeas corpus proceeding is a civil proceeding" and, thus, the state and federal constitutional right to counsel "has no application"); *Ex Parte Mines*, 26 S.W.3d 910, 912–13 & nn.12 & 16 (Tex. Crim. App. 2000) (en banc) (emphasizing language in right-to-counsel provisions of United States and Texas Constitutions limiting right to counsel to "all criminal prosecutions"). Whether the labeling of PCR actions as civil is dispositive has, however, been contested. *See Ex Parte Sandoval*, 508 S.W.3d 284, 288–91 (Tex. Crim. App. 2016) (Alcala, J., dissenting) (noting the first opportunity to make most ineffective-assistance claims is via collateral attack and pro se litigants lack the skill to prosecute the claims).

**G. Iowa Constitutional Precedent Related to the Right to Counsel in PCR**. There are several older cases where we considered whether a right to counsel exists in postconviction proceedings. In *Waldon v. District Court*, we declared, in conclusory language, that the Due Process and Equal Protection Clauses of the United States

Constitution did not require appointment of counsel in PCR proceedings. 256 Iowa 1311, 1315, 130 N.W.2d 728, 731 (1964). The *Waldon* court, however, did not consider the specific question posed in this case, namely, whether a petitioner is entitled to the assistance of counsel when the PCR action is the initial forum for challenging ineffective assistance of counsel at trial. *See id.*; *see also Hawkins v. Bennett*, 160 N.W.2d 487, 492 (Iowa 1968) ("There is no constitutional right to appointment of counsel in all habeas corpus proceedings."); *Larson v. Bennett*, 160 N.W.2d 303, 305 (Iowa 1968) ("It is well settled there is no constitutional right to representation by counsel in habeas corpus proceedings in the federal courts.").

These older Iowa precedents are flawed for several reasons. First, the broad statements in these cases do not confront the problem identified in *Coleman* and *Martinez*, namely, that PCR in some cases amounts to an initial review of a substantive claim. There is a substantial question, as a matter of federal constitutional law, whether a criminal defendant is entitled to at least one effective counsel, and that might well require the appointment of effective counsel in a PCR proceeding. Indeed, in cases involving initial-review collateral proceedings, the petitioner stands in the same position as in *Douglas*, where the Supreme Court held that equal protection required the appointment of counsel for the first appeal as of right. *See Martinez*, 566 U.S. at 5, 11, 132 S. Ct. at 1313, 1317.

Second, there appears to have been no distinct challenge in these older Iowa cases under article I, section 10 of the Iowa Constitution. As recently observed in *State v. Young*, the right to counsel in the Iowa Constitution differs linguistically from that in the United States Constitution and arose in a different historical context. 863 N.W.2d 249,

278–79 (Iowa 2015). The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel." U.S. Const. amend. VI. Under the Sixth Amendment, it is arguable, from a linguistic point of view, that the phrase "all criminal prosecutions" implies the exclusion of cases characterized as civil in nature.

But article I, section 10 of the Iowa Constitution provides, "In all criminal prosecutions, *and in cases involving the life, or liberty* of an individual the accused shall have a right . . . to have the assistance of counsel." Iowa Const. art. I, § 10 (emphasis added). Plainly and indisputably, the language of article I, section 10 is more expansive than the "all criminal prosecutions" language of the Sixth Amendment. In addition to all criminal cases, the Iowa Constitution extends the right to counsel in all cases involving life and liberty. *Id.* Lawyers and judges who believe constitutional text matters must give the additional Iowa constitutional language its full meaning.

Further, the expansive language in article I, section 10 arose in the historical context of a fierce battle over enforcement of the Fugitive Slave Act in Iowa and across the nation. *See* 2 *The Debates of the Constitutional Convention of the State of Iowa* 737 (W. Blair Lord rep., 1857), publications.iowa.gov/7313/2/The_Debates_of_the_Constitutional_ Convention_Vol%232.pdf (recording that delegate Clark defended the "all cases involving the life, or liberty" language as necessary to allow an alleged fugitive slave to have the right to counsel). *See generally State v. Senn*, 882 N.W.2d 1, 36–46 (Iowa 2016) (Wiggins, J., dissenting). Proceedings to enforce the Fugitive Slave Act against alleged fugitive slaves were, of course, civil and not criminal in nature. *Young*, 863 N.W.2d at 278–79. Thus, the law-by-label conclusion that the right to

counsel does not extend to PCR actions because they are civil in nature may apply under the Sixth Amendment, but it has no application at all under article I, section 10 of the Iowa Constitution, which was expressly designed to cover civil proceedings where "life, or liberty" is involved.

In addition to the linguistic and historical differences, there is also an important structural difference. As is evident in *Martinez*, the United States Supreme Court has been reluctant to establish robust civil liberties protections under the United States Constitution because of concerns about federalism. 566 U.S. at 16, 132 S. Ct. at 1319–20; *accord Coleman*, 501 U.S. at 731, 111 S. Ct. at 2554–55 (justifying the doctrine of rejecting federal habeas petitions when there was a procedural default in state court because of federalism concerns); *Francis v. Henderson*, 425 U.S. 536, 541, 96 S. Ct. 1708, 1711 (1976) (stressing "considerations of comity and federalism" require concern for legitimate interests of the state when the Court is asked to overturn a criminal conviction and rejecting a habeas petition because of no showing of actual prejudice when state excluded African-Americans from grand jury and defendant did not object before trial). As Justice Harlan pointed out years ago and has been repeatedly and powerfully demonstrated ever since, one of the disadvantages of incorporation of the provisions of the Bill of Rights against the states is the pressure to dilute the scope of those rights out of concern about adopting a nationwide approach to constitutional questions. *See Malloy v. Hogan*, 378 U.S. 1, 16–17, 84 S. Ct. 1489, 1498 (1964) (Harlan, J., dissenting) (arguing against the incorporation doctrine because "compelled uniformity . . . is achieved either by encroachment on the States' sovereign powers or by dilution in federal law enforcement of the specific protections found in the Bill of Rights"). The diluting pressure of federalism that the United States

Supreme Court has repeatedly cited in refusing to enforce constitutional guarantees has no bearing when we consider constitutional questions under the Iowa Constitution.

Further, the early Iowa cases do not recognize the history behind article I, section 10. In *Young,* we emphasized that the Iowa founders did not want the Bill of Rights to be read in a "cramped, stingy, or fearful fashion." 863 N.W.2d at 278. As a matter of historical context, we noted that the "cases" clause was, in part, designed "to provide protections to persons subject to return to slavery under the Federal Fugitive Slave Act," a distinctly civil context. *Id.* The linguistic, historical, and functional features of article I, section 10 led us to conclude the right to counsel under the Iowa Constitution should be interpreted more expansively than the United States Supreme Court has construed the right to counsel under the Sixth Amendment. *Id.* at 279. *Young,* of course, does not directly provide a rule of decision for this case, but it does stand for the proposition that the scope of the right to counsel under the Iowa Constitution is not limited by narrow federal constitutional precedent.

**H. Iowa Cases Applying Iowa Code Section 822.3 to a Claim of Ineffective Assistance of Counsel in a PCR Proceeding.**

1. *Iowa authority related to statute of limitations in PCR actions.* In 1984, the Iowa legislature amended the PCR statute. 1984 Iowa Acts ch. 1193, § 1 (codified at Iowa Code § 663A.3 (1985)). Prior to 1984, the statute provided that an applicant could file a petition for PCR at any time. Iowa Code § 663A.3 (1983). The legislature amended the statute to require that applicants file their petitions within three years of the date of conviction or issuance of procedendo following appeal, whichever is later. Iowa Code § 822.3 (2015). The amended statute provided an exception,

however, with respect to claims based upon "a ground of fact or law that could not have been raised within the applicable time period." *Id.*; *Brewer v. Iowa Dist. Ct.*, 395 N.W.2d 841, 844 n.1 (Iowa 1986) (quoting Iowa Code § 663A.3 (1985)).

We first considered the meaning of the "ground of fact or law" exception in *Hogan v. State*, 454 N.W.2d 360 (Iowa 1990), *overruled in part by Harrington*, 659 N.W.2d at 521. In *Hogan*, the applicant plead guilty to manslaughter in 1971, served his sentence, and was discharged in 1974. *Id.* at 360. Subsequently, in 1985, the applicant was convicted of murder in Nevada and sentenced to death. *Id.* In upholding the death penalty, the Nevada Supreme Court recognized the 1971 manslaughter conviction as a factor against leniency. *Id.*

In *Hogan*, the applicant sought to challenge his 1971 conviction more than a decade later. *Id.* He claimed that his conviction was invalid because the plea proceedings did not comport with constitutional requirements establishing the voluntariness of the charge. *Id.* at 361. The applicant alleged the "ground of fact or law" was that at the time he entered his plea, he was unaware that his conviction could be used to "severely enhance the penalty for a subsequent crime." *Id.*

We rejected the claim. *Id.* The *Hogan* court stated that "no nexus exists between the ground of fact Hogan asserts and the conviction he seeks to set aside." *Id.* The *Hogan* court further emphasized that the exonerating ground of fact must be "relevant and . . . likely [to] change the result of the case." *Id.* (alterations in original) (quoting *State v. Edman*, 444 N.W.2d 103, 106 (Iowa Ct. App. 1989)). The *Hogan* court noted that the applicant's "newfound insight" fell well outside this category. *Id.* While in *Brewer* we provided parties with a one-year extension to file claims until June 30, 1987, 395 N.W.2d at 844, the

*Hogan* court noted that the applicant failed to meet the *Brewer* deadline even though he was aware of the use of his prior conviction in the Nevada proceedings in May of 1985 when the Nevada Supreme Court decided his case. 454 N.W.2d at 361.

We returned to the new statute in *Wilkins v. State*, 522 N.W.2d 822 (Iowa 1994) (per curiam). In *Wilkins*, the applicant filed his second PCR application nine years after "procedendo was issued on his appeal affirming his conviction for first-degree murder." *Id.* at 823. Wilkins claimed that his trial counsel provided ineffective assistance by failing to preserve the victim's shirt and have it tested for powder burns. *Id.* Wilkins asserted that had the shirt been preserved and tested, it would have shown the shots were delivered at close range, thereby tending to support his claim of self-defense. *Id.* Wilkins further claimed that the absence of the shirt gave rise to an improper presumption and inference that the victim was shot at a distance. *Id.* According to Wilkins, his counsel on direct appeal and his counsel in his first PCR proceeding were ineffective for failing to raise the ineffectiveness of trial counsel in his trial. *Id.*

The *Wilkins* court decided the case in a per curiam opinion. *Id.* The *Wilkins* court noted that Iowa Code section 822.8 claims are barred "unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application." *Id.* (emphasis omitted) (quoting Iowa Code § 822.8 (1993)). The *Wilkins* court contrasted this broad language with the narrow language in Iowa Code section 822.3, which provided that only "claims that 'could not' have been previously raised because they were not available" may be heard after the three-year limitations period. *Id.* at 824.

The *Wilkins* court noted that the applicant had three opportunities to raise the issue—namely, at trial, in his first PCR proceedings, and his second PCR proceeding. *Id.* The court noted that the applicant could not claim ignorance of his claim because he either knew or should have known of counsel's failure to raise the shirt issue. *Id.* The court declared that the interpretation furthered the legislature's goal "to limit postconviction litigation in order to conserve judicial resources, promote substantive goals of the criminal law, foster rehabilitation, and restore a sense of repose in our system of justice." *Id.* (quoting *Edman*, 444 N.W.2d at 106). The *Wilkins* court, however, gave no consideration to the constitutional implications of the ruling.

The next case involving the amended PCR statute is *Dible*, 557 N.W.2d at 882. *Dible* plead guilty to suborning perjury and third-degree criminal mischief in March of 1989. *Id.* He filed a timely application for PCR in 1990, alleging "ineffective assistance of trial counsel and newly-discovered evidence as grounds for relief." *Id.* The PCR action, however, was not timely brought to trial and was dismissed under Iowa Rule of Civil Procedure 215.1. *Id.* The applicant unsuccessfully attempted to determine the status of his case from his attorney. *Id.* at 882–83. Dible finally contacted the clerk of court in May 1994 and learned of the dismissal. *Id.* at 883. He then filed a pro se motion to reinstate his application, but his motion was denied because it fell outside the six-month reinstatement period established by rule 215.1. *Id.*

In November 1994, Dible filed a second petition for PCR. *Id.* He repeated the allegations in his first petition and further alleged that his first PCR attorney provided ineffective assistance "in allowing the first postconviction action to be dismissed." *Id.* The state filed a motion to dismiss Dible's second petition as untimely. *Id.* Dible claimed the first

PCR counsel's ineffectiveness "excused the untimeliness of his second postconviction action." *Id.*

In *Dible,* a 5–4 majority held the claim was time barred. *Id.* at 886. The *Dible* majority first reviewed prior caselaw. *Id.* at 883–84. With respect to *Wilkins,* the *Dible* majority noted that he "had three opportunities to claim ineffective assistance of trial counsel before the time bar became enforceable against him." *Id.* at 884. The majority further noted that in *Hogan,* the "ground of fact" limitation was reserved for grounds that "would likely have changed the result of the criminal case." *Id.* Thus, the *Dible* majority concluded that while ineffectiveness of trial counsel might be a "ground of fact," ineffectiveness of appellate or PCR counsel is not. *Id.* The *Dible* majority emphasized that the proper focus is on whether Dible knew or should have known of the errors made by counsel at trial. *Id.*

The *Dible* court next turned to the statutory language. *Id.* at 885. As in *Wilkins,* the *Dible* court contrasted the language of Iowa Code section 822.8 with the provisions of section 822.3. *Id.* It concluded that while the language in Iowa Code section 822.8 allows a second application where a claim was not raised or was inadequately raised in the first application, no similar exception was provided in 822.3. *Id.* Thus, while section 822.8 allows successive petitions in cases involving ineffective assistance of counsel in the original PCR proceeding, any successive petition generally must be filed within the three-year window established in section 822.3. *Id.*

The *Dible* majority finally turned to the question of legislative intent. *Id.* Citing prior caselaw, it concluded that any other holding "would result in an endless procession of postconviction actions, and the

legislature's hope to avoid stale claims and to achieve a sense of repose in the criminal justice system would not be realized." *Id.* at 886.

Four justices dissented. *Id.* (McGiverin, C.J., dissenting). In an opinion by Chief Justice McGiverin, the dissenters pointed out that under the majority's narrow approach to section 822.3, Dible was "effectively denie[d] . . . any opportunity to have his postconviction claims heard." *Id.* The dissenters noted that Dible's application for PCR was dismissed because of the failure of his counsel to prosecute the claim and that counsel failed to communicate the dismissal to Dible. *Id.* Thus, although Dible had a right to the effective assistance of counsel in his PCR proceeding, Dible never got a hearing on his issues and had "no opportunity to test the validity of the conviction in relation to the ground of fact or law" alleged in his first postconviction action. *Id.* (quoting *Wilkins*, 522 N.W.2d at 824). The dissenters argued that the legislature did not intend for PCR applicants to be precluded from bringing claims, "unless any untimeliness was due to their own inaction." *Id.*

The dissenters also challenged the majority's assertion that there is a distinction between ineffective assistance of counsel at trial and ineffective assistance of appellate or PCR counsel. *Id.* According to the dissent, ineffective assistance of appellate or postconviction counsel could change the result in the underlying trial and, as a result, an applicant could not be precluded from bringing a claim based upon their ineffectiveness. *Id.* at 887.

The next case dealing with the exception to the three-year statute of limitations in section 822.3 is *Harrington.* 659 N.W.2d at 512. Harrington was convicted of first-degree murder in 1978. *Id.* at 514. He filed his PCR action more than twenty years after his conviction. *Id.* at 515. His claim for PCR was based upon undisclosed police reports and

recantation evidence that could not have been discovered earlier in the exercise of due diligence. *Id.* at 515–16. The *Harrington* court concluded that the undisclosed police reports and recantation evidence had "the potential to qualify as material evidence that probably would have changed the outcome of Harrington's trial." *Id.* at 521 (emphasis omitted). The court held that under the circumstances, "Harrington asserted a relevant ground of fact or law 'that could not have been raised within the applicable time period.'" *Id.*

From these cases, the following principles may be gleaned. First, while Iowa Code section 822.8 generally requires that all claims for relief must be raised in the original, supplemental, or amended petition, this limitation may be avoided if counsel ineffectively fails to comply. Iowa Code § 822.8 (2015). However, there is no comparable avenue for relief from Iowa Code section 822.3, which generally states that claims for PCR must be filed within three years of the date the conviction is final or, if appealed, within three years of procedendo. *Id.* § 822.3. An application based on new evidence that could not have been discovered through reasonable diligence, however, is not subject to the three-year limitation. *See id.* An applicant need only allege that the newly discovered evidence or other error is relevant to the case and has the potential to provide a basis for reversal. *See Harrington*, 659 N.W.2d at 521.

Although there is language in *Dible* suggesting that ineffective assistance of appellate and postconviction counsel did not affect the underlying conviction and thus did not form a basis for PCR, our later caselaw eschews any such broad conclusion. Yet the notion that ineffective assistance of appellate or postconviction counsel may provide a substantive basis for PCR does not answer the question in this case, namely, whether such a claim may be brought, under the facts and

circumstances, beyond the three-year limitations period in Iowa Code section 822.3.

2. *Postconviction cases from other jurisdictions.* We now turn to cases from other jurisdictions, understanding that the statutes may employ different language than Iowa Code chapter 822 and that their approach is only as persuasive as the reasoning employed. In *Silva v. People,* the Supreme Court of Colorado permitted a PCR proceeding to proceed outside the generally applicable three-year limitations period. 156 P.3d 1164, 1165 (Colo. 2007) (en banc). Notably, however, the Colorado statue, unlike Iowa Code section 822.3, allows the applicant to establish that "justifiable excuse or neglect" prevented presentation of the claim. *Id.* at 1166.

The Supreme Court of Nevada recently considered a case involving successive petitions alleging ineffective assistance of counsel. *Rippo v. State*, 368 P.3d 729, 733 (Nev. 2016) (per curiam), *vacated sub nom. Rippo v. Baker*, 580 U.S. ___, 137 S. Ct. 905 (2017). Under Nevada law, the statute of limitations for filing a postconviction action was one year but delay could be excused subject to a showing of "good cause" for the delay. *Id.* at 738. The Nevada Supreme Court, however, punted on the good-cause issue by finding that the ineffective-assistance claim failed on the merits. *Id.* at 756. The United States Supreme Court vacated the Nevada Supreme Court's judgment because the Nevada court used an incorrect standard in evaluating the petitioner's claim of judicial bias under the Due Process Clause and remanded the case for further proceedings. *Rippo*, 580 U.S. at ___, 137 S. Ct. at 907. In *Silva* and *Rippo*, the statutory language differs from that in Iowa Code chapter 822, making their discussions of statutory interpretation of limited value in this case.

**I. Discussion.** There are both statutory and constitutional considerations that must be brought to bear in this case. As the *Dible* court noted, there is a difference in the exception language of the antisuccessive petition provision of Iowa Code section 822.8 and the exception language of the generally applicable three-year statute of limitations in Iowa Code section 822.3. 557 N.W.2d at 885 (majority opinion). The use of different language in sections of a statute covering the same subject matter gives rise to the inference that the legislature intended the sections to have a different meaning. *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 811 (Iowa 2011).

The phrase "ground of fact or law that could not have been raised" in the proceeding could be interpreted differently. *See* Iowa Code § 822.3. Because of the ineffective assistance of Allison's first postconviction attorney, the ground of fact or law—his criminal trial counsel's ineffective assistance—could not have been raised in the first PCR proceeding.

Further, the *Dible* interpretation, as applied in this and other cases, is potentially problematic in light of the constitutional backdrop. A defendant could have an ineffective lawyer at trial and then an ineffective lawyer in a timely PCR proceeding. The end result is that a potentially meritorious claim may not be raised within the three-year statute of limitations because of bungling lawyers.

Such a possible result is troubling. There is no question that an accused is constitutionally entitled to assistance of counsel *at trial* under both the Iowa and United States Constitutions. *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14 (1970); *State v. Boggs*, 741 N.W.2d 492, 506 (Iowa 2007); *Collins v. State*, 588 N.W.2d 399, 401 (Iowa 1998). A corollary to the right to counsel, of course, is

the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2063; *State v. Dahl*, 874 N.W.2d 348, 352 (Iowa 2016). The constitutional right to effective assistance of counsel at a criminal trial is the bedrock of our system of justice. *Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063; *Gideon*, 372 U.S. at 343, 83 S. Ct. at 796.

Where counsel has been ineffective at trial, however, an action for PCR is, in most cases, an essential prerequisite to enforce the constitutional guarantee. As noted in *Coleman* and *Martinez*, this is so because, on most appeals, the trial record will be inadequate to determine if the requirement of prejudice has been met under *Strickland*. In these cases, if postconviction counsel is also ineffective in presenting the underlying claim of ineffective assistance at trial, the underlying constitutional entitlement to effective assistance of counsel at trial will be a nullity and lie unenforced. In short, the unquestionable constitutional right to effective counsel at trial may be rendered meaningless for defendants who suffer from successive ineffective assistance.

We bristle at the notion that a criminal defendant has no constitutionally protected right to at least one competent attorney. While the *Dible* majority suggests that the right to counsel is only statutory and that it can be truncated by application of a statute of limitations, this reasoning does not wash if one believes in the right to counsel in the first instance.

This awkward result is mitigated in at least two ways. First, under Iowa Code section 822.8, successive petitions for PCR may be filed if counsel is ineffective in the first petition. Thus, when counsel files a first petition and ineffectively fails to raise a ground for reversal, a successive petition may be filed.

According to *Dible,* however, the second petition must be filed within the three-year limitations period of section 822.3. Meeting the three-year requirement may be difficult because a nonlawyer applicant may not recognize that PCR counsel has been ineffective until after the expiration of the statute of limitations. Thus, under *Dible*, there is a distinct possibility that a defendant may be convicted of serious crimes even though he never had an effective lawyer at trial or in PCR and, thus, was deprived of the opportunity to have potentially meritorious issues determined by a court. No one can find much comfort in such an outcome.

A second mitigating feature is the availability of an actual-innocence claim. A person convicted of a crime seeking relief through asserting actual innocence carries a heavy burden, and such a claim is available to correct only the most egregious miscarriages of justice. An accused who may not be able to establish actual innocence may have nonetheless been deprived of an opportunity for a fair trial because of ineffective assistance of counsel.

We have several options. Although *Dible* has been overturned on other grounds, we can affirm the district court on the ground that, as in *Dible*, a second application alleging ineffective assistance of counsel at trial must be filed within the three-year time period of section 822.3, even in cases involving initial-review collateral proceedings.

A second option is to depart from *Dible* and declare that when a timely PCR petition alleging trial counsel was ineffective is filed under section 822.3, the ineffectiveness of postconviction counsel in presenting the claim is a ground of fact sufficient to avoid the statute of limitations. This result is arguably more consistent with the constitutional

requirement of effective assistance of counsel and the notion that an unenforceable constitutional right is a nullity.

We think the best approach is to qualify *Dible.* While *Dible* engaged in textual and functional analysis of section 822.3, it gave no consideration to the fundamental constitutional interests at stake when an accused alleges ineffective assistance of trial counsel and the PCR proceeding is the first opportunity to raise the issue. In that setting, the posture is precisely the same as in *Douglas*, namely, the first appeal as a matter of right. Where the defendant essentially invokes a first appeal as a matter of right in an initial-review PCR proceeding, application of the equal protection principles in *Douglas* would require appointment of counsel even under the Federal Constitution. Further, the rationales for not providing counsel under the Sixth Amendment—the distinction between criminal and civil proceedings and the diluting influences of federalism—have less application under article I, section 10 of the Iowa Constitution.

Decided in 1996, *Dible* did not have the benefit of the subsequent development in cases of the United States Supreme Court which focused on the peculiar problem of initial-review collateral proceedings. Further, *Dible* made no effort to consider the expansive right-to-counsel provisions of the Iowa Constitution in which the distinction between civil and criminal cases has no linguistic or historical support.

In order to avoid the difficult constitutional position that would result in denying a remedy where defense counsel allegedly provided ineffective assistance at trial and postconviction counsel is ineffective in raising that claim, we think the best approach is to hold that where a PCR petition alleging ineffective assistance of trial counsel has been timely filed per section 822.3 and there is a successive PCR petition

alleging postconviction counsel was ineffective in presenting the ineffective-assistance-of-trial-counsel claim, the timing of the filing of the second PCR petition relates back to the timing of the filing of the original PCR petition for purposes of Iowa Code section 822.3 if the successive PCR petition is filed promptly after the conclusion of the first PCR action. The doctrine of relation back is used "to preserve rights as of the earlier date, or otherwise to avoid injustice." *Windey v. N. Star Farmers Mut. Ins.*, 43 N.W.2d 99, 102 (Minn. 1950). Here, the application of the relation-back doctrine ensures that the right to effective assistance of counsel in PCR is not cut off by the running of the statute of limitations in situations like the one in this case.

This is a variant of the equitable doctrine employed in *Martinez* to allow a petitioner in federal habeas to avoid a procedural default in state court. Under this equitable doctrine, the three-year statute of limitations is tolled from the time of the filing of the first petition for PCR until the first PCR proceeding's conclusion. Upon the conclusion of the first action, the three-year statute of limitations commences to run again.

While there may be more claims under this approach, we do not fear the deluge. Lawyers must have a good-faith basis for filing a pleading, and this principle applies in postconviction proceedings. Further, our court system is fully capable of quickly disposing of claims that have no basis in law or fact.

Nothing in the above discussion, however, suggests that Allison is entitled to relief. Indeed, it may well be that prior counsel, despite diligent efforts, could not develop the claim that Allison seeks to present. Or, it may be that the facts do not support the underlying claim of juror bias at all. Nonetheless, the proper manner to deal with the question is

not to grant a motion to dismiss but to permit Allison to develop the ineffectiveness issue.

**IV. Discussion of Dismissal of Additional Claims in Amended Petition for PCR.**

We now turn to whether the district court properly dismissed the additional claims Allison presented in his amended second petition for PCR.

**A. Preservation of Error.** We first consider whether Allison preserved the additional issues in the district court. In this case, the district court order recognized that additional claims were presented in the amended petition, noted that the amended petition did not alter the "core basis" presented, and entered an order of dismissal. The district court did not enter separate rulings on the claims in the amended petition from those raised in the original petition.

We have held that issues were preserved in other cases where the district court acknowledged the existence of other claims but did not explicitly or separately address them in a ruling. For instance, in *Lamasters v. State,* the district court described the applicant's claims and then denied the application in general terms without individually ruling on the claims presented. 821 N.W.2d 856, 862 (Iowa 2012). We held that the described claims were preserved without the filing of a rule 1.904 motion to obtain a more specific ruling. *Id.* at 864–65. Similarly, in *Meier v. Senecaut,* we noted that a claim raised need not actually be used as the basis for the decision to be preserved if the record reveals the court was aware of the claim or issue and decided the issue. 641 N.W.2d 532, 540 (Iowa 2002). We think that under *Lamasters* and *Meier,* the claims raised in the amended petition are sufficiently preserved for our review.

**B. Dismissal as "Vague."** We next turn to the State's contention that the additional claims in the amended petition were properly dismissed. The State does not defend the district court's order on the ground that the new allegations did not change "the core basis" in the case. Instead, the State suggests that the allegations in the petition were "too vague" and that the district court did not err in dismissing the claims.

At the outset, we note that Iowa Code section 822.7 provides that in a PCR proceeding, "[a]ll rules and statutes applicable in civil proceedings including pretrial and discovery procedures are available to the parties." *See also Nuzum v. State,* 300 N.W.2d 131, 132–33 (Iowa 1981) ("Rules and statutes governing the conduct of civil proceedings are applicable to postconviction proceedings."). Applying the ordinary rules and procedures that apply in civil cases, for example, we have held that when the state seeks to avoid a full trial of relevant facts through a motion for summary judgment, the state, as the moving party, has the burden of showing the absence of triable issues. *Arnold v. State,* 540 N.W.2d 243, 246 (Iowa 1995).

In this case, the State filed a motion to dismiss the claims in the amended petition. As in the case of summary judgment, the rules and procedures that apply to a motion to dismiss a PCR action are the same as those that apply in civil cases.

In civil cases, we approach motions to dismiss with great caution. "A motion to dismiss should only be granted if the allegations in the petition, taken as true, could not entitle the plaintiff to any relief." *Sanchez v. State,* 692 N.W.2d 812, 816 (Iowa 2005). Ordinarily, cases are not resolved on the pleadings. *U.S. Bank v. Barbour,* 770 N.W.2d 350, 353 (Iowa 2009). A motion to dismiss should be granted only when

there is no conceivable state of facts that might support the claim for relief. *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 7 (Iowa 2006); *Golden v. O'Neill*, 366 N.W.2d 178, 179 (Iowa 1985); *Lakota Consol. Indep. Sch. v. Buffalo Ctr./Rake Cmty. Schs.*, 334 N.W.2d 704, 708 (Iowa 1983). We construe the "allegations in the light most favorable to the pleader" and resolve doubts in the pleader's favor. *Meyn v. State*, 594 N.W.2d 31, 33 (Iowa 1999); *Curtis v. Bd. of Supervisors*, 270 N.W.2d 447, 448 (Iowa 1978).

The State has not shown that there is no conceivable state of facts to support the additional claims. If the State believes the allegations in a PCR petition are not sufficiently precise to allow it to file an answer, the State may file a motion for a more specific statement. Iowa R. Civ. P. 1.433 ("A party may move for a more specific statement of any matter not pleaded with sufficient definiteness to enable the party to plead to it and for no other purpose. It shall point out the insufficiency claimed and particulars desired.").

We cannot say based upon the pleading in this case, that there is no conceivable state of facts that might support the claim for relief. *See Kingsway Cathedral*, 711 N.W.2d at 7; *Golden*, 366 N.W.2d at 179; *Lakota Consol. Indep. Schs.*, 334 N.W.2d at 708. As a result, the additional claims in the amended second petition for PCR should not have been dismissed. *See Watson v. State*, 294 N.W.2d 555, 557 (Iowa 1980) (holding that claims in a PCR application should not have been dismissed even though they did not "justify relief as a matter of law" and that even if assertions are "deemed improbable," applicant is entitled "to present to the court whatever proof he may have to support" the claim or to amend the application to be more clear about grounds for relief); *Hines v. State*, 288 N.W.2d 344, 346 (Iowa 1980) (holding a motion to dismiss

in a PCR proceeding is properly granted when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Chartier v. State*, 223 N.W.2d 255, 257–58 (Iowa 1974) (holding, in a case where pro se petitioner inartfully pled that his conditional release was unlawfully revoked, when petition for PCR sufficiently raised grounds under the statute for granting relief, the matter required a hearing to develop the record).  Of course, we take no view on the merits of Allison's claims.

## V. Conclusion.

For the above reasons we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Waterman, Mansfield, and Zager, JJ., who dissent.

**WATERMAN**, **Justice (dissenting).**

I respectfully dissent and would affirm the decision of the court of appeals and judgment of the district court that correctly dismissed Brian Allison's untimely second petition for postconviction relief (PCR) challenging his convictions for sexually abusing his young stepdaughter. This case presents a question of statutory interpretation of Iowa Code section 822.3 (2015)—whether ineffective assistance of PCR counsel falls within an exception to the three-year statute of limitations. We correctly answered "no" to that question over two decades ago in *Dible v. State*, 557 N.W.2d 881, 886 (Iowa 1996) (en banc) (holding "ineffective assistance of postconviction relief counsel is not a 'ground of fact' within the meaning of section 822.3"), *abrogated in part on other grounds by Harrington v. State*, 659 N.W.2d 509, 521 (Iowa 2003). The legislature never amended section 822.3 in response to *Dible*. Neither Allison nor the majority explain how intervening events since 1996 show *Dible* was wrongly decided. I would affirm based on the text of the PCR statute, the venerable doctrine of stare decisis, legislative acquiescence, and sound policy considerations.

## I. The Text of the PCR Statute Is Clear.

Iowa Code chapter 822 governs PCR actions. Section 822.3 sets forth the three-year time-bar and states in part,

> All other applications [i.e., those not filed under section 822.2(1)(*f*)] must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued. However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

Iowa Code § 822.3. Section 822.3 must be read together with section 822.8, which covers ineffective assistance of PCR counsel and states,

> All grounds for relief available to an applicant under this chapter must be raised in the applicant's original, supplemental or amended application. Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

*Id.* § 822.8.

Section 822.3 and section 822.8 are separate limits on the filing of PCR applications. Thus, all grounds for relief must be presented in the first application, unless "for sufficient reason [the ground] was not asserted or was inadequately raised" in the first application. *See id.* But, in any event, all applications must be filed within three years, including second, third, and further applications, unless the ground is one that could not have been raised earlier. *See id.* § 822.3.

In other words, the excuse of "inadequately raised" allows the defendant to file a second or subsequent application, *see id.* § 822.8, but it is not a basis for relief from the three-year bar. *Id.* § 822.3. This is the only plausible way to read the two sections. The legislature has specifically provided that defendants whose prior PCR counsel inadequately raised an issue may have another bite at the apple, but that bite is subject to the three-year time-bar.

This statutory text controls the outcome here—Allison claims his first PCR counsel inadequately raised his challenge to a possibly biased juror, so he should get another chance to raise the issue. But he did so too late because his second PCR action was filed more than three years after his conviction became final. The majority fails to confront this insurmountable textual bar to its result.

Allison never argued that he avoids the statute of limitations because his claims in this action "relate back" to his previously adjudicated and dismissed PCR action. The majority errs by relying on the relation-back doctrine. We have never held that an amendment related back to a pleading in a prior action. An amendment to a pleading can only relate back to the original pleading *in the same action.* *See* Iowa R. Civ. P. 1.402(5); *Jacobson v. Union Story Tr. & Sav. Bank,* 338 N.W.2d 161, 164 (Iowa 1983) ("Rule 89 [now rule 1.402] does provide authority for an amendment to a suit to relate back in time to the filing of the original suit."); *Butler v. Woodbury County,* 547 N.W.2d 17, 19 (Iowa Ct. App. 1996) (permitting relation back in "a pending lawsuit").

Federal courts interpreting the almost identically worded relation-back language in Federal Rule of Civil Procedure 15(c) uniformly reject the argument that an amendment relates back to a pleading in a prior action. *See Rowell v. Stecker,* 698 F. App'x 693, 697 (3d Cir. 2017) ("The plaintiffs cite no legal authority and we have found none for their claim that their complaint can or should be construed to relate back to pleadings filed against different parties in a different lawsuit. Accordingly, the relation back doctrine cannot circumvent the time limit on the plaintiffs' claims." (Citation omitted.)); *Barnes v. United States,* 776 F.3d 1134, 1143 (10th Cir. 2015) (noting the relation-back doctrine "applies to an amendment to a pleading in the *same* action" and therefore rejecting plaintiffs' claim that the second lawsuit was not time-barred because it related back to plaintiffs' first lawsuit); *Velez-Diaz v. United States,* 507 F.3d 717, 719 (1st Cir. 2007) ("Rule 15(c), by its terms, applies to amended pleadings in the *same* action as an original, timely pleading: the pleading sought to be amended may not be a pleading filed in a different case."); *Bailey v. N. Ind. Pub. Serv. Co.,* 910

F.2d 406, 413 (7th Cir. 1990) ("Rule 15(c), by its terms, only applies to amended pleadings in the same action as the original, timely pleading."), *superseded by statute as recognized by Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119–20, 1119 n.55 (7th Cir. 1992). It makes a mockery of the statute of limitations to allow an untimely pleading in a new action to relate back to a prior action. Again, the text of the governing statutes establish that Allison's action is time-barred.

## II. The Majority's Constitutional Concerns Are Overblown.

Disregarding the statutory language, the majority instead travels on what it aptly describes as a "winding" road. Page after page, the majority introduces us to the ins and outs of various United States Supreme Court opinions, although they are primarily dissenting opinions. None of these are on point because we have squarely, and repeatedly, held there is no constitutional right, only a statutory right, to counsel in PCR actions. *See Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011) ("Lado, however, has a statutory, not constitutional right to effective assistance of counsel on postconviction relief."). "[N]o state or federal constitutional grounds for counsel exist in such proceedings." *Wise v. State*, 708 N.W.2d 66, 69 (Iowa 2006); *see also Fuhrmann v. State*, 433 N.W.2d 720, 722 (Iowa 1988) ("[W]e detect no state or federal constitutional grounds for counsel in such a proceeding.").

Rather than take the majority's winding road, I would follow the direct path that leads me to the foregoing Iowa cases. The majority ignores our own precedent and fails to mention our unanimous decisions upholding the constitutionality of the three-year time-bar. *See Perez v. State*, 816 N.W.2d 354, 360 (Iowa 2012) (reiterating that "[w]e have upheld the constitutionality of [section 822.3]"); *Davis v. State*, 443 N.W.2d 707, 710 (Iowa 1989) (addressing purposes of time-bars for

PCRs and stating "due process requires that the interest of the state and the defendant be balanced in determining the reasonableness" of the limitations period).

Additionally, there are several reasons why article I, section 10 of the Iowa Constitution does not apply to PCR actions just based on the text of the provision. When filing a PCR, an applicant is *not* an "accused." Rather, he or she is already convicted and is affirmatively asking the court for relief. Also, if article I, section 10 applied to PCR actions, there would have to be a right to a jury trial. There would have to be a right to confrontation, and PCR applicants would have to be present *in person* for all critical stages of the PCR proceeding. Section 10 is not a cafeteria where you can pick and choose which rights a person gets but a complete package. An "accused" in a criminal case or a case involving life or liberty gets *all* the rights enumerated therein.

In the end, the winding road leads nowhere because the majority acknowledges the result that it reaches is not constitutionally compelled. Nor is today's reinterpretation of section 822.3 justified to avoid a constitutional question. There is no serious constitutional question, nor is there any ambiguity when section 822.3 and section 822.8 are considered together. We have made clear the constitutional-avoidance doctrine cannot be used to alter unambiguous statutory language. *In re Prop. Seized for Forfeiture from Young*, 780 N.W.2d 726, 729 (Iowa 2010) ("[W]e cannot avoid the constitutional issue posed by the [statute's] plain language . . . .").

### III. There Is No Reason to Overrule *Dible.*

*Dible* was correctly decided in 1996, and nothing has changed to warrant overruling it. We unanimously reaffirmed *Dible* in *Walker v.*

*State*, 572 N.W.2d 589, 590 (Iowa 1997) (per curiam). *Dible* provides a clear, bright-line rule that has worked well in practice for decades.

*Dible* has been applied in numerous unpublished court of appeals decisions. For example, there were four opinions in 2016 alone. *See Whiteside v. State*, No. 15–0534, 2016 WL 4051578, at *3 (Iowa Ct. App. July 27, 2016); *Bergantzel v. State*, No. 15–1273, 2016 WL 2745065, at *2 (Iowa Ct. App. May 11, 2016); *Griggs v. State*, No. 15–0510, 2016 WL 2746051, at *1 (Iowa Ct. App. May 11, 2016); *Woodberry v. State*, No. 14–1434, 2016 WL 889727, at *1 (Iowa Ct. App. Mar. 9, 2016). Opinions in this area go unpublished because the law is so obvious and clear. Notably, every one of these unpublished cases is now a case that will be reheard under today's decision.

Under *Dible*, merely alleging ineffective assistance of PCR counsel presents no basis for relief from the underlying convictions. Rather, the ground of fact must be one that *trial* counsel could not have reasonably discovered and that could have avoided the conviction. A breach of duty by PCR counsel is not a new ground of fact. *See Dible*, 557 N.W.2d at 886. *Dible* properly distinguished between ineffective assistance of trial counsel and PCR counsel:

> It is important not to confuse the effect of ineffective assistance of *trial* counsel with the ineffective assistance of *appellate or postconviction* counsel. The errors of trial counsel have a *direct* impact on the validity of a criminal conviction. In contrast, the incompetency of appellate counsel or postconviction counsel cannot have this type of impact because their involvement postdates the defendant's conviction.

*Id.* at 884. *Dible* provided a sound interpretation of the statutory language. *See id.* at 885. And *Dible* "carries out th[e] legislative intent by giving effect to the statute of limitations as it was drafted by the general assembly." *Id.* at 886. We noted, "Any other decision would result in an

endless procession of postconviction actions" and would thwart "the legislature's hope to avoid stale claims and to achieve a sense of repose in the criminal justice system." *Id.*

We too should follow our precedent because Allison cannot show that our long-established interpretation of section 822.3 is wrong or harmful. *See McElroy v. State*, 703 N.W.2d 385, 394 (Iowa 2005) ("From the very beginnings of this court, we have guarded the venerable doctrine of stare decisis and required the highest possible showing that a precedent should be overruled before taking such a step." (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 180 n.1 (Iowa 2004) (Cady, J., dissenting))). This is especially true given the decades of legislative acquiescence in *Dible*'s interpretation of section 822.3. *See Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013) ("[W]e presume the legislature is aware of our cases that interpret its statutes. When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our interpretation." (Citation omitted.)).

**IV. Other Courts Hold Ineffective Assistance of PCR Counsel Does Not Avoid the Statute of Limitations.**

Even if caselaw from other jurisdictions mattered more than Iowa caselaw (and it does not), the majority cites no helpful or persuasive out-of-state authority.

Midway through its opinion, the majority references a 1970 Washington Supreme Court case as being "of interest." Yet the majority disregards a 2015 Washington Supreme Court case that is directly on point—and directly opposed to the majority's view of the case.

Notably, the Washington Supreme Court recently and unanimously rejected "a new exception to the time bar" for ineffective assistance of

PCR counsel. *In re Pers. Restraint of Yates*, 353 P.3d 1283, 1285 (Wash. 2015) (en banc). The *Yates* court noted the state's one-year "time bar and its exceptions are creatures of statute and thus adding additional exceptions to the statute is a matter for the legislature, not this court." *Id.* This is likewise true of Iowa's more generous three-year time-bar in Iowa Code section 822.3. The *Yates* court also rejected the argument that ineffective assistance of PCR counsel constituted newly discovered evidence. *Id.* ("The only thing 'new' here is that Yates's new attorney has a new idea for a claim."). Here, Allison's claim that a juror was biased has already been rejected in his first PCR action, and his second PCR lawyer offers no new information supporting that claim. The *Yates* court honored stare decisis, declining to overturn its precedent without "a clear showing that [the] established rule is incorrect and harmful." *Id.* (quoting *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 322 P.3d 1207, 1212 (Wash. 2014) (en banc)).

The Pennsylvania Superior Court held that a second PCR petition filed after the one-year deadline was time-barred notwithstanding alleged ineffective assistance of counsel in the direct appeal and first PCR action. *Commonwealth v. Saunders*, 60 A.3d 162, 163, 165 (Pa. Super. Ct. 2013); *see also Commonwealth v. Pursell*, 749 A.2d 911, 915 (Pa. 2000) ("[W]hile layered claims of counsel's ineffectiveness may avoid the waiver restrictions in the [Postconviction Relief Act], we have repeatedly held that claims of ineffective assistance of counsel do *not* automatically qualify pursuant to the exceptions to the one-year limitation provided" by statute.). And the majority today ignores still other decisions holding that allegations of ineffective assistance of counsel do not avoid the statute of limitations for PCR claims. *See, e.g., Baker v. State*, 667 So. 2d 50, 51 (Ala. 1995) (holding petitioner's PCR claim based upon

ineffective assistance of counsel was procedurally barred by two-year statute of limitations); *Bevill v. State*, 669 So. 2d 14, 17 (Miss. 1996) ("[T]his Court has never held that merely *raising* a claim of ineffective assistance of counsel is sufficient to surmount the procedural bar. Therefore, Bevill's ineffective assistance of counsel claim is insufficient to surmount the procedural bar" on his PCR claim.); *Winward v. State*, 293 P.3d 259, 265 (Utah 2012) (concluding "the mere allegation that counsel was ineffective is not a reasonable justification for missing the [Post-Conviction Remedies Act]'s time limitations").

Missing from the majority opinion is any persuasive caselaw supporting its decision. That silence speaks volumes. The majority fails to even mention our unanimous decisions in *Davis* and *Perez* upholding the constitutionality of the three-year time-bar of section 822.3. The majority instead relies on dissenting opinions of other courts. Dissents are not the law. The majority's analysis is irrelevant to the interpretation of Iowa Code section 822.3.

**V. The Bad Policy Effects of Today's Decision Will Be Far-Reaching.**

The majority provides no limiting principle for today's decision. Going forward, any allegation of ineffective assistance by PCR counsel will avoid the three-year statute of limitations. This opens the floodgates to stale PCR actions. In effect, there is no longer a statute of limitations in PCR actions. The majority's exception to the three-year time-bar will swallow that time-bar.

One bad consequence of today's decision is that our courts are going to be overwhelmed with PCR filings. Until today, the three-year bar had been a way to summarily dispose of meritless and repetitive PCR applications. No more. Each one of these will have a hearing.

Like it or not (and I do not happen to like it), the criminal justice resources in this state are limited by budgetary pressures. If a large portion of the public defender budget has to be devoted to stale, repetitive PCR applications, that means less of that budget will be available for trials, initial appeals, and initial PCRs.

Also, it is unfair for victims—years after the fact—to be forced to relive traumatic experiences. For many victims, learning that the perpetrator will get a new "hearing" is painful enough. Today's decision will also result in unfairness to the state, as cases thought to be finally resolved years earlier are relitigated long after memories have faded or key witnesses and evidence have become unavailable. *See Davis*, 443 N.W.2d at 710 (addressing purposes of time-bars for PCRs and stating "due process requires that the interest of the state and the defendant be balanced in determining the reasonableness" of the limitations period).

I dissented in *Schmidt v. State*, but I would note that decision already establishes an escape valve for actually innocent defendants. 909 N.W.2d 778, 790, 797–98 (Iowa 2018). Today's case goes further and creates an escape valve for *all* defendants—so long as the defendant filed an initial PCR application of some kind within the initial three-year period after the conviction became final.

**VI. The Facts of This Case Do Not Warrant a Change in Our Established Law.**

Also missing from the majority decision is any discussion of the facts of the crimes of conviction and the absence of any evidentiary basis for relief in Allison's serial PCR actions. The Iowa jury convicted Allison on all three counts of sexually abusing his early teen stepdaughter. The sexual abuse began when his stepdaughter was in seventh grade and continued into her sophomore year of high school at home in the

bathroom and Allison's bedroom while his wife worked the night shift. *State v. Allison*, No. 11–0774, 2012 WL 2819324, at \*1, \*5 (Iowa Ct. App. July 11, 2012) (direct appeal). Several witnesses corroborated the victim's account by testifying to unusual activity such as Allison and his stepdaughter frequently sleeping in the same bed; Allison and his stepdaughter lying on the bed together underneath a blanket, dressed only in underwear; and Allison commenting on his stepdaughter's breasts. *Id.* at \*6.

Allison even now makes no showing he was wrongfully convicted or is entitled to a new trial. The district court and court of appeals previously rejected Allison's claim that a juror was biased because the juror waved at his ex-wife during a recess in his trial. *Allison v. State*, No. 14–0925, 2015 WL 5278968, at \*1–2 (Iowa Ct. App. Sept. 10, 2015) (first PCR appeal; holding no breach of duty by trial counsel). Allison offers no evidence now that an investigation by trial counsel then would have led to the juror's disqualification or a new trial. *See State v. Webster*, 865 N.W.2d 223, 239 (Iowa 2015) (noting that "[i]f we disqualified jurors because they empathized with the family of crime victims, we would have no jurors" and rejecting challenge to juror who "liked" comment by victim's stepmother on Facebook during trial). This is not a compelling test case to blow up the statute of limitations.

### VII. This Is a Matter for the Legislature.

I would defer to the legislature to make the policy decision whether to extend the deadlines for PCR actions to allow multiple bites at the apple and unlimited time to challenge a criminal conviction. *See Davis*, 443 N.W.2d at 710–11 (upholding constitutionality of three-year time-bar for PCR actions and stating that "the legislature, within its sound discretion, may determine the proper limitation period").

Unlike *Schmidt,* which was decided under the Iowa Constitution, today's decision is based on statutory interpretation. *See* 909 N.W.2d at 993–95. The legislature can have the last word and should amend the statute to abrogate today's decision.

## VIII. The Other Grounds Raised by Allison Are Also Nonmeritorious.

The court of appeals in Allison's latest PCR appeal correctly held that he failed to preserve error on his claim that his proposed amended petition avoided section 822.3's time-bar through a cryptic, conclusory allegation that he "has reason to believe that the victim and other witnesses have recanted their testimony." He provided no affidavit of the victim or any witness purporting to recant trial testimony. The district court did not decide that claim, and Allison failed to file a motion to enlarge or amend under Iowa Rule of Civil Procedure 1.904(2) as required for appellate review. Even if we overlook error preservation, I agree with the court of appeals that those "vague and unsupported statements" in his proposed amended petition "are insufficient to avoid a motion to dismiss [because he] does not even assert the new facts and law 'could not have been raised within the applicable time period.' "

For these reasons, I respectfully dissent.

Mansfield and Zager, JJ., join this dissent.