# IN THE COURT OF APPEALS OF IOWA

No. 17-1245
Filed February 20, 2019

**GENE DUWAYNE COOK, JR.,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, William Patrick Kelly, Judge.

Gene Cook appeals from the district court's denial of his application for postconviction relief. **AFFIRMED.**

Gary Dickey of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee State.

Considered by Bower, P.J., McDonald, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**CARR, Senior Judge.**

Gene Cook Jr. appeals from the district court's denial of his application for postconviction relief (PCR). He argues his sentence is cruel and unusual due to gross disproportionality and his age, and he asserts his other claims are not time-barred under recent precedent. We find his sentence is constitutional and his other claims are time-barred even considering recent precedent. Therefore, we affirm.

## I.       Background Facts and Proceedings

Cook was born in September 1982. On October 30, 2003, Cook was found guilty following a bench trial of five counts of lascivious acts with a child—a class "D" felony—occurring in September, October, and November 2002. *See* Iowa Code § 709.8 (2002). Prior to trial, he stipulated he had two prior convictions for sexually predatory offenses in Iowa, specifically indecent exposure.[1] *See id.* § 709.9. On December 4, 2003, the district court applied the enhanced sentencing under Iowa Code section 901A.2 and sentenced him to terms of incarceration not to exceed twenty-five years on each count of lascivious acts with a child, with the sentences on two counts run consecutively and all other sentences run concurrently for a total term of incarceration not to exceed fifty years.[2] Consistent with Iowa Code section 901A.2(3), he was required to serve at least 85% of his sentences. We affirmed his convictions and sentences on direct appeal in *State*

---

[1] Cook testified he was seventeen and eighteen years old when he committed the prior offenses.

[2] Prior to trial, Cook pled guilty to failure to register as a sex offender. *See* Iowa Code §§ 962A.5, .7(1). The court sentenced him to a term of incarceration not to exceed two years on the count, run concurrently with his sentences for the five counts of lascivious acts with a child.

*v. Cook*, No. 03-1992, 2005 WL 291546, at *2 (Iowa Ct. App. Feb. 9, 2005). Procedendo issued March 10, 2005.

Cook filed his first application for PCR on June 16, 2005. The district court denied his application, and we affirmed the denial in *Cook v. State*, No. 10-1877, 2012 WL 1453978, at *1 (Iowa Ct. App. Apr. 25, 2012). Procedendo on his first application issued May 29, 2012. He filed his second application for PCR on November 6, 2012. The district court dismissed his second application on November 1, 2013, and he did not appeal. He filed this application for PCR, his third, on April 7, 2016. In separate rulings, the district court found his sentence was not cruel and unusual or otherwise unconstitutional and his other claims were time-barred. The court ultimately denied his application on July 21, 2017. He now appeals.

## II. Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). "In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Id.* The defendant must prove both prongs by a preponderance of the evidence. *Id.* at 196.

## III. Grossly Disproportionate

Cook argues his sentence is grossly disproportionate to his crimes under the Eighth Amendment to the United States Constitution and Article 1, Section 17 of the Iowa Constitution. *See State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009) (citing *Solem v. Helm*, 463 U.S. 277, 292 (1983)).

In evaluating whether a lengthy sentence is grossly disproportionate under the Cruel and Unusual Punishment Clause, the Supreme Court has developed a three-part test. The first part of the test, sometimes referred to as the threshold test, involves a preliminary judicial evaluation of whether the sentence being reviewed is grossly disproportionate to the underlying crime. This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence. The Supreme Court has not articulated what factors go into this initial determination, but has stated that it is a rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.

If the threshold test has been crossed, the Supreme Court proceeds to steps two and three. In step two, the Supreme Court engages in intrajurisdictional analysis, comparing the challenged sentence to sentences for other crimes within the jurisdiction. In step three, the Supreme Court engages in interjurisdictional review, comparing sentences in other jurisdictions for the same or similar crimes. These last two steps introduce objectivity into the determination of gross disproportionality.

*Id.* (internal citations and quotation marks omitted).

We begin our analysis with the threshold test of "balancing of the gravity of the crime against the severity of the sentence." *Id.* This test "requires a comparison between a defendant's sentence and his particular crime." *State v. Oliver*, 812 N.W.2d 636, 648 (Iowa 2012). In *Bruegger*, our supreme court identified three factors of gross disproportionality:

[(1)] a broadly framed crime, [(2)] the permissible use of preteen juvenile adjudications as prior convictions to enhance the crime, and [(3)] a dramatic sentence enhancement for repeat offenders. Each of these factors, standing alone, has the potential of introducing a degree of disproportionality into a sentence, but the convergence of these three factors presents a substantial risk that the sentence could be grossly disproportionate as applied.

773 N.W.2d at 884.

As to the breadth of crime, Cook asserts "[l]ascivious acts with a child covers a variety of conduct, from mere verbal solicitation of a sex act to the more

objectionable acts of fondling or inflicting pain upon a child." We do not believe verbal solicitation constitutes a "mere" offense, but we agree the crime of lascivious acts with a child encompasses a range of conduct.[3] *See* Iowa Code § 709.8. However, our supreme court has found it sufficient to look at the specific facts and circumstances of the defendant's conduct to determine whether "[t]his is the type of" conduct the statute "was designed to prevent," versus "conduct that was inadvertently caught by a broadly written statute." *Oliver*, 812 N.W.2d at 651–52. While the court in *Bruegger* found the breadth of crime to be an important factor, the court ultimately vacated and remanded the sentence because "the record is limited regarding the underlying facts and circumstances of this offense." 773 N.W.2d at 885–86. By contrast, the record here clearly sets out the underlying, serious facts and circumstances of Cook's criminal interactions with five separate minor victims, as reflected in the initial trial court's findings:

> In each of the instances described by the victims, the defendant made specific (and at times, repeated) requests for an activity understood by the victims to be sexual in nature and wholly inappropriate under the circumstances.[4] On each of these occasions, he followed the victims until they walked, ran or bicycled away. In the case of [W.], the defendant made physical contact with

---

[3] Iowa Code section 709.8, which criminalizes lascivious acts with a child, stated at the time:

> It is unlawful for any person eighteen years of age or older to perform any of the following acts with a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:
> 1. Fondle or touch the pubes or genitals of a child.
> 2. Permit or cause a child to fondle or touch the person's genitals or pubes.
> 3. Solicit a child to engage in a sex act or solicit a person to arrange a sex act with a child.
> 4. Inflict pain or discomfort upon a child or permit a child to inflict pain or discomfort on the person.

[4] The victims, all under the age of fourteen, testified Cook asked them to "give him a blow job," give "head," or "suck dick."

> her and verbally abused her.[5]  In the case of [I.] and [K.], he actually exposed himself to them.  There can be no doubt that the defendant's actions and statements directed to each of these girls were anything but "idle chatter or made in jest."

We conclude the statute clearly encompasses Cook's conduct and raises no inference of disproportionality.

As to the use of preteen juvenile adjudications, the court in *Bruegger* questioned whether "the act of a twelve-year-old is a sufficient basis to dramatically enhance an adult sentence."  773 N.W.2d at 885.  No such concern is present here.  While Cook correctly notes he committed one of his prior offenses when he was seventeen and still a juvenile, this is not a preteen adjudication.  Furthermore, he committed his other prior offense when he was eighteen and no longer a juvenile.  This single adult conviction of a sexually predatory offense—committed about two years prior to the offenses at issue—is sufficient to trigger the sentencing enhancement.  *See* Iowa Code section 901A.2(3) ("[A] person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense, shall be sentenced to and shall serve twice the maximum period of incarceration for the offense, or twenty-five years, whichever is greater . . . .").

As to the dramatic sentence enhancement, the court in *Bruegger* found the enhancement under section 901A.2(3) was a "geometric increase" that weighed toward finding a cruel and unusual punishment.  *See* 773 N.W.2d at 885 (noting that Bruegger, if sentenced without the enhancement to the maximum term of incarceration of ten years, would likely only serve about four years after earning

---

[5] W. testified Cook called her a "bitch."

various credits). Because Cook would face a maximum term of incarceration of five years on each count without the enhancement, the increase is even more dramatic here. *See* Iowa Code § 902.9(5) (imposing a maximum term of incarceration of five years for a class "D" felony). However, we note that only two of Cook's five sentences for lascivious acts with a child were run consecutively; the enhancement here is much less dramatic when comparing the sentence Cook actually received to potentially five unenhanced sentences run consecutively.

Under the *Bruegger* factors, only the dramatic sentencing enhancement weighs toward finding Cook's sentence is cruel and unusual. *See* 773 N.W.2d at 885. We find the enhancement does not alone pass the threshold of disproportionality. *See id.* at 884. Nor do the other *Bruegger* factors converge to generate a high risk of potential gross disproportionality. *See id.* Cook's sentencing enhancement does not rely on preteen juvenile adjudications, and the facts and circumstances underlying his offenses are clearly encompassed within the statute. Therefore, this is not the "rare case" that passes the balancing threshold and we do not find his sentence is grossly disproportionate. *See id.*

### IV. Mandatory Minimum Sentences for Offenders under Age Twenty-One

Our supreme court has held "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause." *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014). Cook asks us to extend this holding to all persons under the age of twenty-one. However, our supreme court explicitly limited its holding to juveniles. *Id.* at 403 ("[O]ur holding today has no application to sentencing laws affecting adult

offenders."). Our supreme court has not extended juvenile sentencing protections to adult offenders, and we also decline to do so. Therefore, the constitutional prohibition on mandatory minimum sentences for juvenile offenders does not affect Cook as an adult offender.

## V.     Statute of Limitations for PCR Claims

Ordinarily, a person must file an application for PCR "within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3; *but see Veal v. State*, 779 N.W.2d 63, 65 (Iowa 2010) (finding the three-year statute of limitations on PCR actions does not apply to a claim the sentence is illegal). Cook's current application for PCR contains allegations his previous PCR counsel was ineffective for failing to raise certain claims. Because procedendo issued on his direct appeal March 10, 2005, and he filed this application for PCR on April 7, 2016, the district court dismissed these claims for being filed beyond the three-year statute of limitations. Cook asks us to extend the statute of limitations for claims prior PCR counsel was ineffective.

After the parties submitted their briefs to us, our supreme court decided *Allison v. State*, 914 N.W.2d 866 (Iowa 2018). In *Allison*, the court created an exception to the statute of limitations:

> [W]here a PCR petition alleging ineffective assistance of trial counsel has been timely filed per section 822.3 and there is a successive PCR petition alleging postconviction counsel was ineffective in presenting the ineffective-assistance-of-trial-counsel claim, the timing of the filing of the second PCR petition relates back to the timing of the filing of the original PCR petition for purposes of Iowa Code section 822.3 if the successive PCR petition is filed promptly after the conclusion of the first PCR action.

*Id.* at 891. However, this narrow exception cannot help Cook. This is his third—not second—application for PCR. While this current application focuses on the claimed mistakes of his second PCR counsel, his first PCR counsel was able to pursue the same claims. This third application has not been "filed promptly," as the term is commonly understood.[6] He filed this application more than forty-six months after the conclusion of his first PCR action and more than twenty-nine months after the conclusion of his second PCR action.[7] Therefore, even applying the rule announced in *Allison*, Cook's application is untimely. *See id.*

## VI. Conclusion

Cook's sentence is not cruel and unusual punishment when considering either the proportionality to his conduct or his age. Additionally, his other claims that his PCR counsel was ineffective are time barred.

**AFFIRMED.**

---

[6] The dictionary defines "promptly" as "in a prompt manner; at once; immediately, quickly." Webster's Third New International Dictionary 1816 (unabr. ed. 2002).

[7] *Allison* references, but does not adopt, a tolling variant where the three-year statute of limitations is tolled during an active PCR claim. *See* 914 N.W.2d at 891. Cook's PCR claim is untimely even under this variant as more than three years has passed between procedendo on his direct appeal and filing his first PCR, procedendo on his first PCR and filing his second PCR, and the conclusion of his second PCR and filing his third PCR.