# IN THE COURT OF APPEALS OF IOWA

No. 18-2189
Filed April 29, 2020

**MICHAEL EARL HILSON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


Michael Hilson appeals the district court's dismissal of his application for

postconviction relief.  **AFFIRMED.**


Gary Dickey of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee State.


Considered by Vaitheswaran, P.J., Ahlers, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**MAHAN, Senior Judge.**

Michael Hilson appeals the district court's dismissal of his second application for postconviction relief. Upon our review, we affirm.

## I. *Background Facts and Proceedings*

In 2010, following a jury trial, Hilson was convicted of burglary in the first degree and sexual abuse in the third degree. The facts underlying Hilson's charges and convictions were set forth in *State v. Hilson*, No. 10-0665, 2013 WL 541621, at *1–2 (Iowa Ct. App. Feb. 13, 2013) (*Hilson I*) (affirming Hilson's convictions on direct appeal), and reiterated in *Hilson v. State*, No. 15-0679, 2016 WL 6652329, at *1 (Iowa Ct. App. Nov. 9, 2016) (*Hilson II*) (affirming the denial of Hilson's first PCR application). To briefly summarize:

> In September 2006 T.B. called 911 to report she had been raped. Officer Bernlohr, who was nearby, responded within a few minutes. She encountered a crying, distraught, and injured T.B. who described the events of the preceding four hours. The officer took T.B. to the hospital, where she was examined [and a rape kit was prepared.] . . . T.B. died in a motor vehicle accident in late 2006.
> . . . . [A] detective had the rape kit sent to the Iowa Division of Criminal Investigation for analysis. The DNA analysis led the detective to Hilson . . . .
> . . . . Hilson denied knowing T.B., and T.B.'s daughter and boyfriend did not know of any connection between T.B. and Hilson.

*Hilson I*, 2013 WL 541621, at *1, *3.

Hilson filed this PCR application in 2017. The State filed a motion for summary disposition, contending Hilson's application was barred by the three-year statute of limitations in Iowa Code section 822.3 (2017). Hilson resisted the motion, and the court set a hearing on it.

Prior to the hearing, Hilson filed Exhibit A, which was a copy of a "Call for Service Report" from T.B.'s 911 call. At the hearing, Hilson argued the service

report was "newly discovered evidence," which he claimed contradicted other evidence presented at trial. According to Hilson, the service report stated T.B. was "still tied up during the time of this call," but "the call was received at 4:36, . . . the time that it was dispatched was 4:37, [and] the time they arrived was at 4:39. So they're saying that she was fully dressed, standing outside, screaming that two guys that sexually assaulted her." Hilson claimed, "[S]o that gives her approximately two minutes to get fully dressed and standing outside. I just don't think that's possible." Hilson also alleged "there is police reports that says she was untied by police officers."

Following the hearing, the court concluded Hilson's claim was time barred and dismissed his application. Hilson appealed.

## II.     Scope and Standards of Review

The district court summarily disposed of this case under Iowa Code section 822.6. We apply summary judgment standards to summary disposition of PCR applications. *See Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). "Generally, we review a grant of a motion to dismiss a PCR petition for correction of errors at law." *Allison v. State*, 914 N.W.2d 866, 870 (Iowa 2018).

## III.     Discussion

Iowa Code section 822.3 requires most PCR applications to be filed "within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." *Thongvanh v. State*, 938 N.W.2d 2, 8–9 (Iowa 2020) (quoting Iowa Code § 822.3). "There is an exception to that three-year statute of limitations for 'a ground of fact or law that could not

have been raised within the applicable time period.'" *Id.* (quoting Iowa Code § 822.3).

Hilson challenges the district court's summary dismissal of his claim through a merits analysis of a newly discovered evidence claim rather than applying a ground-of-fact test to determine whether it was time barred.[1] The court rejected Hilson's claim that the service report constituted newly discovered evidence, stating, "Not only has the applicant failed in his burden to establish that this report could not have been discovered earlier in the exercise of due diligence, at best the report could only serve to impeach [T.B.]'s testimony." The court further stated it was "convinced that this solitary piece of evidence pales in comparison to the overwhelming evidence that otherwise connects the applicant to the crimes in question."

The supreme court has "emphasize[d] the ground-of-fact exception pursuant to section 822.3 is not the same as a substantive claim for postconviction relief based on newly discovered evidence pursuant to section 822.2(1)(d)." *See Moon*, 911 N.W.2d at 143 (citing *Harrington v. State*, 659 N.W.2d 509, 520–21 (Iowa 2003)). We first determine whether Hilson could have raised the alleged ground of fact within the required time. *See id.* at 144. At the PCR hearing, Hilson stated he "asked for this 911 call," but "they never brought up, never showed me copies of when I asked—I asked for everything." Hilson explained, "A guy told me [years later] [j]ust write the police department and ask them for it. And so I did.

---

[1] We proceed to address Hilson's contention despite the State's error preservation challenge. *See, e.g.*, *Moon*, 911 N.W.2d at 142–44 (addressing similar argument on appeal where applicant raised the issue as ground-of-fact exception but argued it under newly-discovered-evidence test).

They charged me five bucks and they sent me this."  Viewing the record in the light most favorable to Hilson, we conclude a genuine issue of material fact exists as to whether he could have raised the alleged ground of fact before the end of the limitations period.  *Cf. Harrington*, 659 N.W.2d at 521 (finding the applicant could not have discovered the undisclosed police reports and the recantation evidence "earlier than they were discovered in the exercise of due diligence").

The next question is whether the ground of fact Hilson relies on "is *relevant* to the challenged conviction."  *See Moon*, 911 N.W.2d at 143.  "In this context, 'relevance' means 'the ground of fact must be the type that has the *potential* to qualify as material evidence for purposes of a substantive claim under section 822.2.'"  *Cropp v. State*, No. 17-1952, 2019 WL 3943992, at *3 (Iowa Ct. App. Aug 21, 2019) (quoting *Moon*, 911 N.W.2d at 143).  The district court found "at best the report could only serve to impeach [T.B.]'s testimony," but in any event, it "pale[d] in comparison to the overwhelming evidence" connecting Hilson to the crimes.

"[F]or purposes of determining whether the exception to the limitations period applies, we do not reach the merits of whether [the evidence] 'would likely or probably have changed the outcome of the underlying criminal case.'"  *Moon*, 911 N.W.2d at 144 (quoting *Harrington*, 659 N.W.2d at 521).  And we are not to "automatically exclude impeachment evidence from the potentially material evidence category."  *Id.*  We find the evidence has some potential to qualify as material evidence relating to Hilson's conviction, and it is therefore relevant and meets the nexus requirement.  Because Hilson raised a relevant ground of fact

"that could not have been raised within the applicable time period," *see* Iowa Code § 822.3, this action is not time barred.[2]

We turn to the merits of Hilson's claim. To prevail on claim of newly discovered evidence, Hilson was required to show:

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Harrington*, 659 N.W.2d at 516 (citation omitted).

The service report provided: "LOI search completed at 09/21/06 04:36:54 10-17 TINA, SAID 2 BM'S 1 HAD A GRY HOOD SWEATSHIRT, 1 HAD A BRO SHIRT AND BALD THEY HAD BEEN THERE DOING THIS SINCE 1230 TONIGHT HER HANDS ARE STILL TIED." Hilson argues that T.B.'s 911 call was received at 4:36, police arrived at 4:39, and "[t]hey said that when they got there, she was standing outside screaming that she had been sexually assaulted," but "that gives her approximately two minutes to get fully dressed and standing

---

[2] Hilson filed a pro se brief, which the State moved to strike. Pursuant to recent legislation, "An applicant seeking relief under section 822.2 who is currently represented by counsel shall not file any pro se document, including an application, brief, reply brief, or motion, in any Iowa court. The court shall not consider, and opposing counsel shall not respond to, such pro se filings." Iowa Code § 814.6A(1) (2019). This court has declined to apply the provision to appeals such as this one that were filed before July 1, 2019, the effective date of the legislation. *See State v. Krone*, No. 18-0130, 2020 WL 821935, at *4 (Iowa Ct. App. Feb. 19, 2020); *State v. Syperda*, No. 18-1471, 2019 WL 6893791, at *12 (Iowa Ct. App. Dec. 18, 2019); *State v. Purk*, No. 18-0208, 2019 WL 5790875, at *7 n.8 (Iowa Ct. App Nov. 6, 2019).

However, the claim raised in Hilson's pro se brief is that the district court erred by failing to apply the relation-back doctrine of *Allison v. State*, 914 N.W.2d 866, 890 (Iowa 2018), to prevent dismissal of his application on statute-of-limitations grounds. Because we have concluded Hilson's application was not time barred, his pro se brief does not affect our opinion in this case.

outside. I just don't think that's possible." Hilson also contends the fact that the service report stated T.B.'s "hands are still tied" at the time of the 911 call contradicts "police reports that says she was untied by police officers."

As noted above, "Officer Bernlohr, who was nearby, responded within a few minutes" of T.B.'s 911 call and "encountered a crying, distraught, and injured T.B. who described the events of the preceding four hours." *Hilson I*, 2013 WL 541621, at *1. Officer Bernlohr's police report was introduced into evidence at Hilson's criminal trial. It provided, in relevant part:

> While still tied, [T.B.] called 911. When we arrived, [T.B.] was hysterical and had deep marks around her ankles and wrists. However, she had on new shorts and a sweatshirt. I transported her to Mercy Capitol and then to Mercy Central. Ident processed the scene and took pictures of [T.B.] Off. Rodgers talked to the neighbors and wrote a sup. [T.B.] stated that they never said names, just called each other dog. She has no idea who they are. Sus #1 wore a gry hooded sweatshirt w/ blu sleeves and had a goatee. Sus #2 wore a brn t-shirt and blu jeans.

Considering Hilson's argument relating to the import of the service report, we believe its contents would have been merely cumulative and impeaching. *Cf. Christensen v. State*, No. 18-2164, 2020 WL 1049844, at *3 (Iowa Ct. App. Mar. 4, 2020). Moreover, there is evidence in the record that dispels Hilson's claim that T.B. would have been unable to dress and position herself outside in the minutes before police responded to the scene. We further acknowledge that this court has twice before noted the strength of the evidence against Hilson. *See Hilson I*, 2013 WL 541621, at *3 (setting forth incriminating evidence and stating, "The State's case against Hilson for both third-degree sexual abuse and first-degree burglary was strong"); *Hilson II*, 2016 WL 6652329, at *3 (quoting the district court's holding that "Hilson's trial was continued several times to allow for additional testing on the

DNA evidence, and three testing facilities reached the same conclusions, i.e. that Hilson's DNA matched the DNA found in or on the victim," and finding "the possible identification of a third person as having at some point been present in the apartment—assuming the tests would have even found DNA belonging to a third party—does not rise to the level of a reasonable probability of a different result for Hilson, whose DNA was found in the victim").  We conclude Hilson "has failed to show that admitting [the service report] probably would have changed the result of the trial."  *Cf. Christensen*, 2020 WL 1049844, at *3.

We affirm the denial of Hilson's application for postconviction relief.

**AFFIRMED.**