# IN THE COURT OF APPEALS OF IOWA

No. 20-1603
Filed November 23, 2021

**GATLUAK CHUOL BOL,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

      Appeal from the Iowa District Court for Marshall County, John J. Haney, Judge.

      Gatluak Chuol Bol appeals the dismissal of his second postconviction-relief application.  Bol alleges his postconviction counsel was ineffective for failing to identify a claim of ineffective assistance of trial counsel.  **AFFIRMED**.

      R. Ben Stone of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer, LLP, Des Moines, for appellant.

      Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

      Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Gatluak Chuol Bol appeals the dismissal of his second postconviction relief (PCR) application. He contends his PCR counsel was ineffective in failing to identify a claim of ineffective assistance of trial counsel. Bol asserts his trial counsel failed to use information available for cross-examination to attack a witness's credibility and the district court should not have summarily dismissed his application without affording him an evidentiary hearing. We determine Bol's claim was previously litigated. Assuming arguendo there was a breach, Bol cannot establish prejudice. Accordingly, we affirm the summary disposition entered by the district court.

## I. Facts and Prior Proceedings

Bol was charged with third-degree sexual abuse, in violation of Iowa Code sections 702.17, 709.1, and 709.4(1)(a) (2014), and assault with intent to commit sexual abuse, in violation of Iowa Code sections 708.1 and 709.11. Before his trial, the parties were informed Bol's counsel had represented Officer Ramon Maxey in an unrelated family-law matter. The State planned to use Officer Maxey as a witness at trial. Both Bol and Officer Maxey signed conflict-of-interest waivers, and the case proceeded to trial. Bol was convicted by a jury on both charges in December 2015 and sentenced to an indeterminate twelve-year prison term.

Bol's conviction was affirmed on direct appeal. *State v. Bol*, No. 16-0370, 2017 WL 936110, at *5 (Iowa Ct. App. Mar. 8, 2017). Our court summarized the facts of Bol's appeal as follows:

> In late October 201[4], L.H. started working the night shift at the JBS Swift plant. After a training session in early November, she lost her way back to the company office and encountered

coworker Bol. When she asked him directions, he . . . eventually said he would escort her there. Instead, he led her down a long hallway into the basement.

In that isolated location, Bol pushed her up against the wall and tried to kiss her. L.H. told Bol to leave her alone and tried to walk away. But he blocked her departure with his arm and tried to open her shirt and kiss her neck. She also thought he was reaching for his penis so that she would "have some kind of relations with him." She rebuffed him, saying: "No, I'm not that girl. I'm not doing this." He then pushed her head toward his penis, and L.H. recalled him saying "something like suck my dick" as "he was reaching into his pants." L.H. yelled, but she could not be heard on the floors above over the whir of machinery.

As she tried to scramble away, L.H. fell to the floor. She felt a light bulb hit her head. . . . Bol pulled off her clothes, tried to penetrate her anus, then pulled out her tampon, and penetrated her vagina. During the sex act, he was startled and released her arms. She was able to pull up her uniform pants and run for help. Shaking and crying, she immediately reported the rape.

When police interviewed Bol, he denied committing the sex act and predicted they would not find his DNA on L.H.'s body or clothing. But later testing did show Bol's DNA on L.H.'s underwear and on swabs of her vagina, inner thighs, and anus. Police also found the broken light bulb and tampon on the basement floor of the plant. In a later interview, Bol admitted arguing with L.H. in the basement but said nothing sexual happened, and he could not explain how his DNA ended up on her body.

. . . .

At trial, the State offered testimony from L.H., several investigating officers, and a criminalist who had compared the DNA samples. Bol took the stand in his own defense, telling the jury L.H. twice asked him for directions that night and then came back a third time "looking for sex" in exchange for money. He claimed the sex act in the basement was consensual, but she "took off" because they fought over the payment arrangement. Apparently accepting L.H.'s testimony and rejecting Bol's version of events, the jury returned guilty verdicts on both counts.

*Id.* at *1–2.

Bol filed his first PCR application on August 10, 2017, and amended it on April 11, 2018. The petition alleged, among other things, that counsel was ineffective and a conflict of interest existed between Bol's trial counsel and Officer Maxey. The district court denied the application and this court affirmed the district

court's denial of postconviction relief. *Bol v. State*, No. 19-0225, 2020 WL 3571807, at *3 (Iowa Ct. App. July 1, 2020).

While the appeal of his first PCR action was pending, Bol filed a second PCR application—the subject of this appeal. The application made several allegations, only one of which is raised in the instant appeal. Bol alleges his PCR appellate counsel was ineffective for failing to recognize and pursue trial counsel's failure to obtain and use information available for cross-examination. This claim specifically targeted any information gained by trial counsel during representation of Officer Maxey in an unrelated family law matter. The State moved for summary dismissal, which the district court granted. Bol appeals.

## II. Standard of Review

We review a grant of a motion to dismiss a PCR application for correction of errors at law. *Allison v. State*, 914 N.W.2d 866, 870 (Iowa 2018). When the PCR application claims ineffective assistance of counsel, our review is de novo. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011).

## III. Analysis

Iowa Code section 822.6 provides:

> 2. When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to postconviction relief and no purpose would be served by any further proceedings, the court may indicate to the parties its intention to dismiss the application and its reasons for dismissal. The applicant shall be given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if a material issue of fact exists.
> 3. The court may grant a motion by either party for summary disposition of the application, when it appears from the pleadings,

depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Two methods are available for disposition of PCR applications without a trial on the merits. The first method allows for such disposition *on the court's initiative* and entitles the applicant to notice of the court's intention to dismiss the application and its reasons for dismissal. *Hines v. State*, 288 N.W.2d 344, 346 (Iowa 1980); *see also* Iowa Code § 822.6(2).

The second method allows for such disposition *on the motion of either party.* *Hines*, 288 N.W.2d at 346; *see also* Iowa Code § 822.6(3). The goal here "is to provide a method of disposition *once the case has been fully developed by both sides,* but before an actual trial." *Id.* (emphasis added).

Disposition under the second method is "analogous to the summary judgment procedure provided in Iowa Rules of Civil Procedure 237-240" (now rules 1.981-1.983). *Summage v. State,* 579 N.W.2d 821, 822 (Iowa 1998). The language in paragraph three of section 822.6 is comparable to Iowa Rule of Civil Procedure 1.981 (formerly rule 237) relating to summary judgments.

The moving party has the burden of showing the nonexistence of a material fact and the court is to consider all materials available to it in the light most favorable to the party opposing summary judgment. *Knudson v. City of Decorah,* 622 N.W.2d 42, 48 (Iowa 2000); *Behr v. Meredith Corp.,* 414 N.W.2d 339,341 (Iowa 1987). A genuine issue of material fact exists if reasonable minds could draw different inferences and reach different conclusions from the undisputed facts. *Behr,* 414 N.W.2d at 341.

To prevail in his claim, Bol must show that his counsel (1) breached an essential duty, and (2) prejudice resulted.  *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012).  Both elements must be proven by a preponderance of the evidence.  *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).  If the applicant fails to establish prejudice, the claim "can be decided on that ground alone without deciding whether the attorney performed deficiently."  *Id.*  Claims of ineffective assistance of appellate counsel are treated the same as ineffective assistance of trial counsel claims.  *Jasper v. State*, 477 N.W.2d 852, 855 (Iowa 1991).

For breach of duty, Bol must establish that his attorney's conduct fell below the standard of a "reasonably competent attorney."  *See Lamasters*, 821 N.W.2d at 866.  Starting with a presumption that the attorney performed competently, "we measure the attorney's performance against 'prevailing professional norms.'"  *Ledezma*, 626 N.W.2d at 142 (citation omitted).  To establish prejudice, Bol must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id.*

We turn to Bol's sole claim on appeal.  Bol's assertions that counsel breached an essential duty are contradicted by the record originating from Bol's first PCR action and this court's opinion affirming the dismissal of Bol's original claims.

> Bol raises four of his ineffective-assistance claims on appeal: (1) trial counsel failed to argue Bol's speedy-indictment rights were violated, (2) trial counsel failed to "appropriately advise and inform Bol about consequences of testifying at trial," (3) trial counsel failed

to "recognize conflict of interest and withdraw," and (4) trial counsel failed to "assert and remedy disparity in the jury panel."

. . . .

On this record, we question whether there was a conflict of interest because (1) counsel's representation of the witness had ended before he began representing Bol and (2) it does not appear counsel's past representation of the witness—in an unrelated family-law matter—materially limited counsel's representation of Bol. *See State v. McKinley*, 860 N.W.2d 874, 882 (Iowa 2015). Even if there was a conflict, Bol was certainly able to and, in fact, did waive the conflict. Iowa Rule of Professional Conduct 32:1.7(b)(4) allows an attorney to represent a client if "each affected client gives informed consent, confirmed in writing." That is what happened here. Bol and the witness both signed documents entitled "Waiver of Conflict Interest." The signed documents provided each waived "any and all conflict or conflicts" and authorized trial counsel to represent Bol. And Bol provides no reason to believe the waivers were insufficient. So this ineffective-assistance claim fails as well.

*Bol*, 2020 WL 3571807, at *1, 3.

In his second PCR, Bol urges us to carve out a new claim from the litigated PCR claim regarding the conflict of interest by arguing that the failure of trial counsel to fully utilize his knowledge related to his past representation of Officer Maxey for impeachment represents breach of his essential duty, which was also unrecognized by his first PCR counsel. Bol argues none of the six grounds for relief argued to the district court by PCR counsel, including the conflict of interest claim, involved the cross-examination of Officer Maxey by defense counsel. We disagree. Bol raised this issue in his first PCR action in the context of the waiver of conflict of interest. Consequently, Bol's first PCR counsel did not breach an essential duty.

Even if we were carve out a separate claim and drill down to the narrow issue of cross-examination of the officer within the litigated conflict of interest claim, Bol cannot establish prejudice on this record. Officer Maxey played a minimal role

in the trial and the events that preceded it. His involvement was limited to taking Bol into custody and reading him his Miranda rights. The only evidence that he testified to that was not corroborated by other witnesses was that Bol seemed unsurprised when Officer Maxey told him a crime had occurred. While relevant, this is a minor detail given the other evidence presented during the trial.[1] During the trial, defense counsel and the State were clear the jury's decision hinged on the competing versions of events presented by the victim and Bol. There is not a reasonable probability that a more thorough attack of Officer Maxey's credibility, including any cross-examination about an unrelated family law matter, would have changed the outcome of the trial. Bol's failure to establish prejudice also defeats his claim. *See Ledezma*, 626 N.W.2d at 142.

### IV. Conclusion

We reject Bol's claim that his PCR counsel was ineffective. The issue of the conflict of interest was litigated in Bol's initial PCR. We find the issue of cross-examination of Officer Maxey was tangential to this claim. Even if we were to determine a breach of essential duty, which we do not, Bol cannot establish prejudice on this record given the limited involvement of the officer in in the trial. Accordingly, we affirm the district's courts dismissal of Bol's second claim.

**AFFIRMED.**

---

[1] Twelve witnesses testified over the course of the trial, including several other officers who interacted with Bol.